## SAMUEL L. MOORE v. F. D. HILL.

*Evidence. What locality is meant by a given name? Offer to repair damage an admission. Testimony of wife as husband's agent. Election of forms of action.*

1. The defendant hired the plaintiff's team to go to "Willoughby Lake." The question being whether, under the contract, the defendant had a right to drive merely to the Willoughby Lake House, and whether he had converted the team by extending his drive to a point four miles further along the lake shore, *held*, that evidence might be given to show what locality was commonly meant by that term ; and that the fact that persons familiar with the vicinity addressed letters to Willoughby Lake which were intended for the Willoughby Lake House, was competent ; but that the fact that a particular stable keeper had uniformly left people whom he carried to the lake, at or near the Willoughby Lake House, was not.

2. What the defendant said after the accident about making good the damage done the team is admissible.

3. A wife, in testifying to a contract made by her as her husband's agent, may state what transpired upon a former occasion, when the former event enters into the contemplation of the parties in the making of the contract in question.

4. The defendant claimed that the plaintiff, knowing all the facts, had charged him for the use of the team, and thereby elected to stand upon the contract. *Held*, that an instruction, that if the plaintiff had understandingly made a choice and treated the use of the team as under the contract, he could not recover in this form of action, was sufficiently favorable to the defendant.

Trover for the conversion of a horse, carriage and harness. Plea, the general issue. Trial by jury at the December Term, 1889, Ross, J., presiding. Verdict and judgment for the plaintiff. Exceptions by the defendant.

The plaintiff kept a livery stable at St. Johnsbury, and the defendant hired of him the team in question to go to " Willoughby Lake." The plaintiff claimed that the defendant had driven the team further than the destination contracted for, and thereby converted it.

Moore *v.* Hill.

Willoughby Lake is about twenty-three miles north of St. Johnsbury and some six miles long. At the southern end stands a hotel known as the Willoughby Lake House, in the vicinity of which are picnic grounds, a postoffice and steamboat landing. The highway runs along the eastern shore of the lake, and upon this, about four miles north of the Willoughby Lake House, is another hotel, known as the Willoughby House, or Gilman's, near which are other picnic grounds and another steamboat landing. The plaintiff claimed that he only let the team to go to the southerly end of the lake. The defendant insisted that the hiring of the team to go to the lake fairly included the trip along the eastern shore. In fact the team was driven to the northerly hotel, and, in returning, the horse got off the road into the lake and was injured. As tending to show what the term " Willoughby Lake " meant, one Bryant, a livery stable keeper, was permitted to testify that in the last ten years he had, on some thirty occasions, taken parties from St. Johnsbury to the lake, and had always stopped either at the Willoughby Lake House or the picnic grounds near there.

Certain other witnesses were allowed to testify that, being familiar with the locality, they were accustomed to address letters intended for the Willoughby Lake House, to " Willoughby Lake."

The plaintiff was also permitted to testify that after the accident the defendant told him to get a doctor for the horse, and offered to buy another horse and to pay for the repairs upon the carriage, and that the defendant took some steps to have the carriage repaired.

The contract for the team was made by the wife of the defendant, acting as his agent. The defendant proposed to show by her that upon a previous occasion she had hired a team of the plaintiff for the same trip, and had gone to the northerly hotel, and had lost a mat from the carriage at that hotel, as the plaintiff knew. The testimony was excluded as not being properly within the agency of the wife.

The testimony of the defendant further tended to show that the plaintiff, after being fully informed of the circumstances of the accident, entered upon his books a charge against the defend-ant for the use of the team at the regular rate, and it was contended in behalf of the defendant that, having elected to stand upon the contract, he could not now proceed in tort. The charge of the court upon this branch of the case was as follows:

"The defendant argues that because the plaintiff, as he says, afterwards—that is for you to determine whether it was so or not—after he had learned where she had been and where the accident occurred, made the charge upon his book. They say that the first charge was to go to the lower place, as a charge generally for the use of the team, after he knew what it was he made the general charge for, and that that would signify that he made the charge, choosing to treat it as a charge for a letting to go to this place where they did go, and not to take his remedy in trover.

"Now that would be true if it was a deliberate understanding choice on his part. If Mr. Moore, after knowing this whole story, what had transpired, had brought a suit against Mr. Hill to recover for the use of his team on this occasion and had recovered, and had not brought it in this form for damages in trover, that would have been an election to treat it as a contract to go where she did. He could not have recovered then in trover, because he would have waived any right to treat it as a case in trover or for a conversion. He would have held the defendant for the use of the team on this occasion, and have treated the team as his own during all the time until it got back to him. In order to have the effect of a waiver it must have been under-standingly and intentionally made. If he pursued it to a judgment in an action to recover for the use there would have been no doubt about it. If he received pay for it understandingly, knowing all about it, it would probably have precluded him from seeking to recover in trover. But just what force should be given to what he did is for you to say, what he did in carrying out this charge. It does not appear that he has ever been paid that or ever demanded pay for it.

"It is for you to say whether he has understandingly made a choice on his part, and treated the use of the team as under the contract. If he has, that would be a waiver of a recovery in this

form of action. But if he has not understandingly, knowing his rights, fairly treated it so, he would not be precluded from pro- ceeding in this form of action."

*Henry C. Ide,* for the defendant.

Bryant's testimony was inadmissible. At most it only shows what Bryant's custom was, unknown to either of these contracting parties. *Chamberlin* v. *Rankin,* 49 Vt. 133.

His opinion as to what the phrase meant was incompetent. That was the question for the jury. *State* v. *Hopkins,* 50 Vt. 329; *Clough* v. *Patrick,* 37 Vt. 429; *Bank* v. *Isham,* 48 Vt. 593; *Crane* v. *Northfield,* 33 Vt. 124; *Fraser* v. *Tupper,* 29 Vt. 409; *Oakes* v. *Weston,* 45 Vt. 430; *Bain* v. *Cushman,* 60 Vt. 343.

It does not appear but that Bryant's contract was to go just where he did. No inference can be drawn from this that some one else made the same contract. *Walworth* v. *Barron,* 54 Vt. 677; *Aiken* v. *Kennison,* 58 Vt. 665; *Harris* v. *Howard,* 56 Vt. 695; *Phelps* v. *Conant,* 30 Vt. 277.

The testimony of witnesses that they were accustomed to address their letters to " Willoughby Lake," when intended for the Willoughby Lake House, only showed that in the opinion of these witnesses the two names were identical. It does not show how the fact was or that these parties had knowledge of it in contracting.

The testimony of the wife as to the former trip should have been received. It showed what the parties had in mind when they made this contract. *Martin* v. *Hurlburt,* 60 Vt. 364; *Town* v. *Lampshire,* 37 Vt. 52; *Orcutt* v. *Cook's Est.,* 37 Vt. 515.

Since the facts were undisputed the court should have held as a matter of law that the plaintiff, having elected to stand upon the contract, could not maintain this action. *Bank* v. *Fassett,* 42 Vt. 432; *Bigelow* v. *Dennison,* 23 Vt. 564; *West* v. *Platt,* 127 Mass. 367.

*Bates & May*, for the plaintiff.

It was competent to show by persons familiar with the locality what was understood by the term " Willoughby Lake," and in no other way could it be shown.  Of this character was the evidence of Bryant, and of those persons who addressed to Willoughby Lake letters intended for the Willoughby Lake House. Starkie Ev. 164 *et seq.*; Taylor Ev. s. 613, (Am. Ed.) pp. 541, 542.

The jury were properly left to say whether upon the evidence the plaintiff had elected to stand upon the contract.  *Saville* v. *Welch*, 58 Vt. 683.

The opinion of the court was delivered by

ROWELL, J.  The contract was for a team " to go to Willoughby Lake," and the question was whether that limited the journey to the south end of the lake or permitted it to extend four miles down the lake, to Gilman's.  The language of the contract, of itself, did not make that certain, and so it was competent to resort to extrinsic evidence to aid in its interpretation.  It is like proving custom and usage to ascertain the meaning of contracts, which are but modes of interpretation, going upon the theory that the parties knew of their existence and contract with reference to them.  *Barnard* v. *Kellogg*, 10 Wall. 390. So it may be shown that the language used has a local meaning, provided enough appears to charge the party against whom such meaning is set up with knowledge of it at the time he contracted. *Walls* v. *Bailey*, 49 N. Y. 464; 2 Whart. Ev. s. 392.

But Bryant's testimony had no tendency to show that the phrase, " to go to Willoughby Lake," meant in local signification to go to the south end of the lake only.  It did not appear what his contracts were.  They may have been special, fixing the very point to which he should carry.  Hence his testimony did not even amount to saying what he understood the phrase to mean ; much less, that it had any *local* meaning, prevailing in a given district.  It was merely telling what he had done on divers occasions, and did not touch the question at issue.

Moore *v.* Hill.

The testimony of witnesses familiar with the locality, that they were accustomed to address letters intended for the Willoughby Lake House to " Willoughby Lake," there being a post office near that house, had some tendency to show that the phrase in question had a local meaning, and such as plaintiff claimed, and it was therefore admissible.

What defendant said about getting the horse doctored, and offering to buy plaintiff another, and promising to pay for repairing the carriage, as well as what he said to the carriage-maker, does not appear to have been inadmissible. The testimony was of doubtful import, unquestionably, but for aught that appears it was legally susceptible of being construed into an admission of liability, which of course might be shown.

Defendant's wife testified that when she hired the team she told plaintiff " she thought she should go and get the mat she lost the time before." This language, unexplained, had no significancy to one unacquainted with the circumstances referred to ; but with the explanation offered to be shown by her, it would have been significant to show that plaintiff understood the contract to be for a team to go as far as Gilman's, and that was the purpose for which it was offered. But the offer was excluded as not coming within the scope of her agency. In this there was error.

Explanation of the language used, the stating of facts necessary to give it point and meaning, was but another way of telling what the contract was as the parties who made it understood it at the time. This she was as competent to do as she was to testify to the language used in negotiating or the language used in the contract as made. It all would have amounted to no more than to testifying to what the contract was, and the scope of her agency covered all.

There is no error in the charge. It was left to the jury to say whether the plaintiff understandingly made a choice to treat the use of the team · as under the contract ; and they were instructed that if he did, it would be a waiver of his right to recover in trover. This was all the defendant could ask, and gave him the full benefit of his testimony as to plaintiff's charging in account for the use of the team after he knew all the facts.

(28) *Judgment reversed and cause remanded.*