CHARLES O. DWIGHT, Respondent, *v.* FRANK A. CUTTING, Appellant.

*Evidence — when a contract is interpreted in accordance with a general custom — allowance for shrinkage where bark is measured in a railroad car — charge of the court as to a custom — testifying from a memorandum.*

Where a usage is reasonable, uniform, legal and well settled, and is not in contradiction of the express terms of a contract, and is so far established and known to the parties that the contract may be assumed to have been made with reference to it, it is to be deemed a part of the contract, and may be resorted to in fixing its interpretation.

A general custom among dealers in bark to make an allowance for shrinkage, where bark is piled and measured in railroad cars, may be shown, and where no amount of shrinkage was spoken of between the parties to a contract for the sale of bark, a cord of bark will be taken to mean a cord with the customary shrinkage deducted

In this view, it is erroneous for the court, in an action brought to recover the purchase price of certain hemlock bark, to refuse to charge that, independently of any specific agreement as to the amount of shrinkage, the fact that the parties agreed that the bark should be measured in the car implied that the measurement should be according to the general custom of the bark trade.

It is erroneous to allow a witness to testify from a memorandum, where it does not appear that the memorandum was made at the time of the transaction, or that it was made by the witness himself.

APPEAL by the defendant, Frank A. Cutting, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Franklin on the 21st day of March, 1895, upon the verdict of a jury rendered after a trial at the Franklin Circuit, and also from an order entered in said clerk's office on 15th day of March, 1895, denying the defendant's motion for a new trial made upon the minutes.

*Cantwell & Cantwell,* for the appellant.

*Gordon H. Main,* for the respondent.

MAYHAM, P. J.:

The plaintiff, in his complaint, alleged that the defendant was indebted to him in the sum of $201, being the balance on account of certain hemlock bark purchased by the defendant of the plaintiff, and for services performed by the plaintiff for defendant in loading bark. The answer was:

*First.* A general denial.

*Second.* That by the contract for the purchase of the bark by the defendant, the plaintiff agreed to pile it in a particular way described in the answer, and that in consequence of the plaintiff's failure to pile the bark as agreed, it could not be measured on the ground; that plaintiff and defendant subsequently agreed that the bark should be loaded on cars and there measured, and that on such measurement a certain allowance, agreed upon between the parties, should be made for shrinkage, and that the defendant was to pay for the bark at the rate of five dollars per cord; that, pursuant to the measurement agreed upon, the defendant accepted the bark, and paid therefor the sum of $1,310.15, which was the full purchase price, and was received by the plaintiff in full for said bark.

The answer further states that about fourteen cords of damaged, broken bark was left upon the plaintiff's premises, which the defendant was not, by his contract, bound to take.

The principal contention on this appeal is, as to whether the custom or usage for the measurement of bark loaded upon railroad

cars was established by the evidence so as to bind the plaintiff to accept payment according to the measurement, based upon such alleged custom.

There seems to be no dispute that, if the custom were established so as to bind the plaintiff, the quantity of bark as contended for by the defendant, and as paid for by him, was fixed according to the alleged custom, and the amount paid by the defendant upon that theory would be a full payment and satisfaction for the amount of bark received by the defendant.

The defendant established by the testimony of several witnesses the existence of a custom among bark dealers for the measurement of bark when loaded upon cars, and that the bark in question was measured and paid for according to that custom. One of the witnesses said: "That is the universal custom." Another witness said: "I know what the universal custom of the trade is in regard to making those shrinkages in that way. The custom is to shrink an inch on a foot in height." Another witness said: "I know what the custom is among bark dealers as to allowance for shrinkage where bark is piled and measured in the car. The custom is to shrink one inch to the foot in height on open cars." Another witness said: "There is a custom among bark dealers, to my knowledge, as to the shrinkage of bark where it is measured on the cars. The general custom is that they shrink it. The general custom is an inch to a foot in height."

The existence of this custom does not seem to have been controverted by the plaintiff, nor does he deny or attempt to prove any want of knowledge of the existence of such custom, and there seems to be no dispute but that the parties agreed that the bark should be measured on the cars.

Upon these facts it is quite clear, in the absence of any proof to the contrary, that the measurement of the bark upon the cars, according to the known and recognized custom, was a proper method of ascertaining the amount or quantity of bark delivered, and that payment in accordance with the ascertained quantity, at the agreed price per cord, would be full legal payment upon the contract.

It is true that the existence of the usage and the knowledge of the parties to a contract of its existence are questions of fact proper for the consideration and determination of a jury. And in a case

in which the evidence was doubtful, either as to the existence of the usage or as to the fact of the knowledge of its existence to either of the parties, the verdict of the jury against its existence would be conclusive upon the parties. ( *Walls et al.* v. *Bailey*, 49 N. Y. 464.)

But where the usage is reasonable, uniform and well settled, and not in opposition to fixed rules of law, nor in contradiction of the express terms of the contract, and is so far established and known to the parties that it may be supposed the contract was made in reference thereto, it is deemed a part of the contract and may be resorted to by the court in fixing its interpretation. ( *Newhall* v. *Appleton*, 114 N. Y. 140.)

There is a conflict in the evidence in this case upon the question as to whether or not anything was said about shrinkage as seems to be contemplated by the usage proved. The plaintiff Dwight denies that anything was said. The defendant and some of his witnesses testified that the amount of shrinkage was agreed upon. But, assuming that nothing was said, as claimed by Dwight, the case would then be one to which the law of custom or usage would clearly apply.

A pile of bark eight feet long and four feet high by four feet wide would embrace the solid contents of a cord, but as bark is not capable of being compressed, a uniform usage fixing the amount of shrinkage would be peculiarly applicable to the measurement of such a commodity, and where the usage existed and no amount of shrinkage was spoken of between the parties, the word "cord" in the contract would mean a cord with the customary shrinkage deducted.

In the case at bar, had the jury followed the instruction of the learned trial judge as indicated in his charge, it would not only have found the existence of the custom, but that the measurement of the bark in this case was in accordance with that custom.

In that view of the case, from the undisputed evidence, it would seem to follow that the plaintiff had received full compensation for the bark actually delivered to and received by the defendant, and that a verdict against the defendant for that bark would be unsupported by the evidence.

But there is another element in this case which we are called upon to consider. It is claimed by the plaintiff that the defendant pur-

chased and agreed to take all the bark which plaintiff had at the railroad station, and that some of plaintiff's bark at that point was left by the defendant, and was not included in the measurement of the bark measured in the cars. But if that contention be correct, still the verdict would, in amount, seem to be unsupported by the evidence. If we assume that the broken bark left at the railroad station was such quality of bark as was contemplated by the contract, the evidence clearly shows that the quantity so left was not more than fourteen cords. That quantity at the agreed price of five dollars per cord would, at most, amount to but seventy dollars, and a verdict for $151.29 would be clearly in excess of the value of the bark left at the railroad station established by the proof. So, that the verdict as found by the jury is not, in that view of the case, sustained by the proof.

Several exceptions were taken by the defendant to the rulings of the learned judge upon the trial, which we are also called upon to consider. While plaintiff was under examination as a witness in his own behalf he was asked in reference to the quantity of the bark: " How much did he actually load and take away from that place ? " And the witness, before answering, referred to a written memorandum. Defendant objected to the witness referring to the memorandum unless it was one made by him. The objection was overruled, and the defendant excepted. On his cross-examination this witness stated that he did not measure the bark. He further said : " I think I kept a memorandum of it a little. I don't know where the memorandum is now. I have not got it with me."

Under such circumstances it would seem to be clearly error to allow the witness to testify from the memorandum which he produced, and from which he appeared to testify. There was no evidence from this witness that the memorandum was one made by him at the time, or a copy of any such. memorandum, nor can it be assumed, for the purpose of upholding this verdict, that the plaintiff testified from his recollection, unaided by the memorandum.

We think, therefore, the exception to the ruling of the learned trial judge in the admission of that evidence was well taken. And, as the testimony was on one of the material points in issue, it cannot be said that it had no influence with the jury.

We think, also, that the learned trial judge erred in refusing to

charge, as requested by the defendant, at folio 151 of the case. That request was as follows :

" That independently of any specific agreement as to the amount of shrinkage, the fact that it was agreed that it should be measured in the car implied that such measurement should be according to the general custom of the bark trade."

The court refused to charge as requested, and the defendant duly excepted.

If we are right in assuming that a custom was proved for the measurement of bark when loaded upon cars, and that that custom was known to the parties, then it would seem to follow, as we have before intimated, that in the absence of direct proof of an agreement as to the method of measurement, the agreement proved was a proper subject for the consideration of the jury, and the court should have charged as requested. His refusal so to charge was error.

On the receipt of the verdict the defendant moved upon the minutes to set it aside, which was refused by the court, and the defendant excepted. We think, upon the whole evidence in the case, and the exceptions taken, it was error for the learned judge to deny the motion of the defendant to set aside the verdict.

For the reasons herein stated we think the judgment should be reversed.

HERRICK, J., concurred ; PUTNAM, J., concurred in result.

Judgment reversed and a new trial granted, costs to abide the event.