(19 Misc. Rep. 5.)

### BRISCOE v. LITT.

(Supreme Court, Appellate Term, First Department. December 28, 1896).

1. MASTER AND SERVANT—BREACH OF EMPLOYMENT CONTRACT—DAMAGES.

    Under a contract for theatrical employment, where both parties recognize a custom that such contracts may be arbitrarily terminated on two weeks' notice, the maximum damages recoverable by the player for the manager's breach is two weeks' salary at the contract rate.

2. SAME—OFFSET.

    The master cannot set off, against the damages resulting from his breach of · the contract of employment, the amount which the servant could have earned in the time of nonemployment, in employment of a different kind or lower rank.

3. APPEAL—ERROR—NO EXCEPTION.

    A mistake of the jury in awarding excessive damages in the city court cannot be corrected by the appellate term of the supreme court, where the error has not been presented by a proper exception.

Appeal from city court of New York, general term.

Action by Fannie Briscoe, by her guardian, Charles H. Luengene, against Jacob Litt. From a judgment of the city court (41 N. Y. Supp. 1107) affirming a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Pinney & Thayer (Aaron C. Thayer, of counsel), for appellant.
Fromme Bros. (Jacob Fromme, of counsel), for respondent.

McADAM, J.　The action is to recover damages from the defendant, a theatrical manager, for a breach of contract to employ the plaintiff "to perform for him as actress, to sing and act in the drama 'Ole Olson,' for the season of 1894 and 1895, being about thirty weeks, at a salary of $30 per week."　The main dispute was as to the duration of the plaintiff's engagement,—whether it was to continue only for the Ole Olson season (that is, as understood in the theatrical profession, during the run of that play), or for an entire dramatic season, which is a period of not less than 30 weeks.　The plaintiff testified that at the time of her employment she belonged to the Francis Wilson Company, that the defendant induced her to give up that engagement and enter his company, and that in such exceptional case the substituted engagement is always understood in the profession to be one for the theatrical season.　It was on this alleged custom that the case went to the jury, and upon it a recovery was had for the entire amount claimed, less what the plaintiff had earned in other similar employments.　The plaintiff testified that she had no express agreement with the defendant as to how long her engagement should continue; that it was for the season, subject to a custom prevailing in the profession that, if either party was dissatisfied, it might be terminated on two weeks' notice. She then testified:

"When I went into the employment of Litt, I knew I could terminate that, according to custom, on giving two weeks' notice, and I also knew he could terminate it on giving two weeks' notice to me; and so the utmost I could get under that custom would be the salary for two weeks if notice was served."

Acting on this custom, the plaintiff gave the Francis Wilson Company notice of her election to terminate her engagement with it, and on November 3, 1894, severed her relation with that company.

The proper office of a usage or custom is not to contradict the terms of a contract, but to afford an interpretation and explanation of the otherwise indeterminate intentions of the parties.　In the interpretation of a contract, the usage or custom of trade may be resorted to, not only to explain the meaning of terms to which a peculiar and technical meaning is thereby affixed, but also to supply evidence of the intentions of the party in respect to matters with regard to which the contract itself affords a doubtful indication, or perhaps no indication at all.　Story, Cont. § 649; 1 Pars. Cont. (6th Ed.) 547; 6 Wait, Act. & Def. 623.　Hence an established custom may add to a contract stipulations not contained in it, on the ground that the parties may be supposed to have these stipulations in their minds, as part of their agreement, when they put upon paper or expressed in words the other part of it.　2 Pars. Cont. (6th Ed.) 536.　When the custom is established, it may enter into the body of the contract without being actually inserted in words.　Clarke's Browne, Us. & Cust. p. 23, note; 1 Cooley, Bl. 76, note.　Its existence raises the presumption that the parties acted in conformity to it.　Clarke's Browne, Us. & Cust., at p. 35; Walls v. Bailey, 49 N. Y. 464; Newhall v. Appleton, 114 N. Y. 143, 144, 21 N. E. 105; Atkinson v. Truesdell, 127 N. Y. 234, 27 N. E. 844.　On October 20th

the defendant closed the Ole Olson season because of his inability to secure the players desired for the company, and thereupon wrote the plaintiff, notifying her of the fact. The letter is postmarked October 27, 1894, and was received by the plaintiff on that day. This notice effectually shut the plaintiff out of her engagement, prevented performance on her part, and constituted a breach (Howard v. Daly, 61 N. Y. 362) which entitled her to whatever damages necessarily flowed from the wrong; and these, under any allowable construction of the plaintiff's contract, are limited to two weeks' salary (Watson v. Russell, 149 N. Y. 388, 44 N. E. 161; Fisher v. Monroe, 2 Misc. Rep. 326, 21 N. Y. Supp. 995).

The defendant claims that because the plaintiff could have remained with the Francis Wilson Company, after service of the notice, at $18 per week, $36 must be credited upon the two weeks' salary. This is not so. The plaintiff was a chorus girl in the Wilson Company, and, as she said, "very ambitious to become an actress and take a part." She left that employment and engaged with the defendant to gratify her desire. The rule in regard to mitigating damages against the employer by accepting other employment relates to other employment of the same kind. Fuchs v. Koerner, 107 N. Y. 529, 14 N. E. 445; 3 Wait, Act & Def. 607; 1 Lawson, Rights, Rem. & Prac. 486, 487; 14 Am. & Eng. Enc. Law, 796. The employé is only required to engage in service of a character and grade equal to that from which he was discharged, and nothing inferior in rank or degree. Wood, Mast. & Serv. (2d Ed.) 250, and other authorities above cited. The plaintiff was unable to obtain any such employment up to November 28th, so that the defendant failed to establish a right to deduct anything from the two weeks' salary. Howard v. Daly, supra; 2 Suth. Dam. 473, 474; Dearing v. Pearson, 8 Misc. Rep., at page 276, 28 N. Y. Supp. 715. Smith v. Robson, 148 N. Y. 252, 42 N. E. 677, to which we have been referred by the respondent's counsel, does not relate to the custom which controls here, but to a special contract in writing by which the employer reserved the right to discharge his employé if in good faith he should become satisfied of the latter's incompetency. The question of good faith or incompetency does not enter into the custom under consideration. By this custom the rights of the parties must be decided, for it gives either the absolute right to terminate the contract upon giving two weeks' notice, without regard to motives, arbitrary or otherwise, and irrespective of competency or incompetency. It is clear, therefore, that the recovery beyond the two weeks, when by force of the notice and conceded custom the contract was effectually terminated, is without evidence, or, what amounts to the same thing, is against the undisputed evidence, and that the general term of the city court ought to have reversed the judgment as excessive, unless the plaintiff consented to reduce the recovery to $60 and interest. But that court did not choose to do that, and we are without power to afford the defendant any relief, for there is no exception which presents the error in a form which authorizes us to interfere. If the defendant's counsel had requested the court to charge that in no event was the plaintiff entitled to recover more

than $60, an exception to a refusal would have presented the error in a form which would have given us power to review and correct it.

In Rowe v. Comley, 11 Daly, 318, the court said:

" 'When a trial and general verdict have been had, we can deal only with questions of law arising upon exceptions duly taken, and we cannot correct the errors of the jury.' This is the rule as laid down in the court of appeals in the cases of Oldfield v. Railroad Co., 14 N. Y. 310, and Standard Oil Co. v. Amazon Ins. Co., 79 N. Y. 506; and, as the appellate powers of this court in respect to appeals from the general term of the marine [now city] court are similar to those of the court of appeals in the cases of appeals to that court, the same rule must obtain."

See, also, Eckensberger v. Amend, 10 Misc. Rep. 145, 30 N. Y. Supp. 915; Pharo v. Beadleston, 2 Misc. Rep. 424, 21 N. Y. Supp. 989; Sweetzer v. Cameron, 3 Misc. Rep. 71, 22 N. Y. Supp. 555; Ebenreiter v. Dahlman (opinion filed Dec. 28, 1896) 42 N. Y. Supp. 867.

In Schwinger v. Raymond, 105 N. Y. 648, 11 N. E. 953, the court said:

"The court below had the power to set aside the verdict as contrary to the evidence without any exception, but in this court we can consider no objection which is not based upon some exception taken at the trial. Therefore, however unjust this verdict may be, upon the facts appearing in the case, we are powerless on that account to give the defendant any relief."

See, also, Young v. Davis, 30 N. Y. 134; Barrett v. Railroad Co., 45 N. Y. 628; Cooper v. Transportation Co., 75 N. Y., at page 121; Bank v. Butler, 133 N. Y. 564, 30 N. E. 646; Jung v. Keuffel, 144 N. Y. 381, 383, 39 N. E. 340.

Following this rule, the judgment must be affirmed, with costs. All concur.