### BRUNOLD v. GLASSER et ux.

(Cattaraugus County Court. October, 1898.)

1. CUSTOMS AND USAGES—BRICKLAYING—"THOUSAND"—EVIDENCE.

In an action on a written contract to lay brick at so much "a thousand," evidence of a well-known custom prevalent in the business and in the locality is admissible to show that a thousand is estimated according to the cubic feet of masonry of laid brick and of one-half the openings in the building, rather than by actual count.

2. MECHANICS' LIENS—BREACH OF CONTRACT—DAMAGES.

In an action by a contractor to foreclose a mechanic's lien, evidence is not admissible as to the difference between the value of the building as it was finished and as it should have been finished, where there was evidence that the defects could be remedied.

3. EVIDENCE—EXPERTS—COMPETENCY.

One engaged in the business of roofing and cornice-making, but who was not a bricklayer, nor knew how to remedy the defect in certain walls. is incompetent to testify to the cost of taking down such walls and rebuilding them.

4. MECHANICS' LIENS—CONSENT OF OWNER TO THE WORK.

Evidence that the owner of property was present at the making of a contract to construct an improvement on the property, and almost constantly during the work, and that the money to pay for the construction was raised by a mortgage on the property, shows her consent to the work, as required by the mechanic's lien law.

5. JUSTICES OF THE PEACE—APPEAL—REVIEW.

County courts, on appeal, cannot review the weight of evidence for the purpose of reaching a conclusion contrary to that reached in the justice court.

Appeal from justice court of Olean.

Action by Peter Brunold against Ludwig Glasser and another to foreclose a mechanic's lien. From a judgment of a justice court of the city of Olean for plaintiff, defendants appeal. Affirmed.

M. B. Jewell, for appellants.
P. S. Collins, for appellee.

KRUSE, J.    The plaintiff entered into a contract with the defend-
ant Ludwig Glasser to lay brick in constructing a building owned by
his wife, the defendant Matilda Glasser.    The contract provided, in
substance, that the plaintiff was to lay the brick, and furnish mortar
and scaffolding, for the sum of $5.25 a thousand.    Upon the part of
the defendant, it is claimed that the plaintiff was only entitled to re-
cover at the specified rate per thousand brick according to the actual
count of the kiln owners who delivered the brick; while upon the
part of the plaintiff it is claimed that there was a general custom or
usage, well known in business of this character, that one cubic foot of
solid wall of masonry should be regarded as $22\frac{1}{2}$ brick, and that one-
half of the openings, such as the doors and windows, should be in-
cluded in making the measurement.    The plaintiff gave evidence
tending to prove that such usage existed, and testified that prior to
the making of the contract he informed the defendant Ludwig of this
method of ascertaining the quantity of brick laid.    The defendant
denied that he had been so informed by the plaintiff or had any
knowledge of any such custom.    No evidence was given upon the part
of the defendants that such usage did not exist, although it is claimed
upon the part of the defendants that the proof given on behalf of the
plaintiff in that regard is insufficient.    I think the evidence tends to
show that this usage was in common practice, and was well known to
persons engaged in business of this character, not only in the locality
where this building is located, but generally throughout different por-
tions of the state.

It is, however, strenuously urged on behalf of the appellants that
this proof was at variance with the express terms of the written con-
tract, and this, I think, presents the serious question in this case; for
a usage, however general its practice may be, is not permitted to
contradict the express terms of a contract, but its purpose is rather
to supplement or amplify the contract, which may be ambiguous or
for any reason fails to state, in express terms, the complete contract.
The application of the rule regarding usage rests upon the presump-
tion that parties in making contracts do so with the intention that
it shall be regarded as a part of the contract.    I do not think, how-
ever, that the contract under consideration is so free from ambiguity,
and is so definite and certain that the basis of compensation was to
be determined only by the numerical count of the brick laid, that it
can be said that the evidence of this custom was so far at variance
with the writing that it contradicted its express terms.    The contract
does not bear evidence of the greatest care and skill in reducing it to
writing, and, even if the missing word in the contract is to be supplied
by implication, so that it shall read that the price was to be per thou-
sand brick, yet, in the absence of any specification in the contract as
regards the size or kind of brick, and from the facts and circumstances
as developed from the testimony given on behalf of the plaintiff, it
does not seem unreasonable to assume that the parties had in mind

the practice, which prevailed in the locality, of ascertaining the quantity of brick according to a definite and certain amount of masonry of laid brick, rather than actual count. In Walls v. Bailey, 49 N. Y. 464, it was held that, under a contract to do plastering at a fixed rate per square yard, it was competent to prove a custom to charge for the entire surface without deduction for openings. And Judge Folger, in writing the opinion, refers to several cases, and at page 468 says:

"So, in Lowe v. Lehman, 15 Ohio St. 179, in a contract to furnish and lay up brick at so much per thousand, the controversy was as to the proper mode of counting. Evidence of a local usage to estimate by measurement of the walls, on a uniform rule, based on the average size of brick, making slight additions for extra work and wastage, deducting for openings in wall, but not for openings in chimney or jambs, nor for caps, sills, nor lintels, was admitted as not unreasonable."

Also in Fitzimmons v. Academy, 81 Mo. 37, it was held competent to show custom, in measuring masonry, to count corners twice, each corner constituting a part of two intersecting walls, and all openings for doors and windows as if solid. And it has also been held that, upon the purchase of shingles by the thousand, it was competent to show a custom that packs of certain dimensions were regarded as certain and fixed,—a definite number,—regardless of the quantity numerically (Soutier v. Kellerman, 18 Mo. 509; Bragg v. Bletz, 7 D. C. 105); and in Smith v. Wilson, 3 Barn. & Adol. 728, a leading English case, that a custom might be shown that the word "thousand" denoted twelve hundred, although this case is criticised in our own state by Judge Bronson in Hinton v. Locke, 5 Hill, 437. In White v. Town of Ellisburgh, 18 App. Div. 514, 45 N. Y. Supp. 1122, it was held competent to show the meaning of the term "iron bridge" in the contract, and to prove the prevailing usage among bridge builders in regard to the material used for joists. And a conversation had between the same parties at a prior time, for another iron bridge, was permitted to be given, to the effect that, if iron joists were to be used, it must be specifically so stated; otherwise they would be wood.

In Brown v. Byrne, 77 E. C. L. 702, cited in 27 Am. & Eng. Enc. Law, p. 809, in note, Coleridge, J., said: '

"In all contracts, as to the subject-matter of which known usages prevail, parties are found to proceed with the tacit assumption of these usages. They commonly reduce into writing the special particulars of their agreement, but omit to specify these known usages, which are included, however, as of course, by mutual understanding. Evidence, therefore, of such incidents is receivable. The contract in truth is partly expressed and in writing; partly implied or understood, and unwritten. But, in these cases, a restriction is established, on the soundest principle, that the evidence received must not be of a particular which is repugnant to, or inconsistent with, the written contract. Merely that it varies the apparent contract is not enough to exclude the evidence; for it is impossible to add any material incident to the written terms of a contract without altering its effect more or less. Neither in the construction of a contract among merchants, tradesmen, or others will the evidence be excluded because the words are, in their ordinary meaning, unambiguous; for the principle of admission is that words perfectly unambiguous in their ordinary meaning are used by the contractors in a different sense from that. What words more plain than 'a thousand,' 'a week,' 'a day'? Yet the cases are familiar in which 'a thousand' has been held to mean twelve hundred; 'a week,' a week only during

the theatrical season; 'a day,' a working day. In such cases the evidence neither adds to nor qualifies nor contradicts the written contract; it only ascertains it by expounding the language."

Some of the questions bearing upon the question of custom, asked on behalf of plaintiff, may be subject to criticism, but in view of the fact that no evidence was given to the contrary on behalf of the defendant, and the evidence in that regard is undisputed, and that the custom is established by evidence competent and proper, I would not be justified in setting aside the judgment. The proof offered on behalf of the defendant by the witness Pierce, as to the difference in value of the building as it was claimed to be by the defendant and as he claimed it should have been, I think was properly excluded. Proof was given by the defendant that whatever defects existed could be remedied, and witnesses who were competent to express an opinion were called by the defendant, and asked as to the manner of overcoming the defects which were claimed to exist, and gave testimony as to the value of the work. The witness Pierce was asked the cost of taking down the walls and rebuilding them, which was objected to, upon the ground, among others, that the witness was not competent, and the objection was sustained. Pierce was not a bricklayer. His business was that of roofing and cornice-making. He conceded that he did not know how to remedy the defects, and I think it cannot be said that the justice erred in refusing to receive his opinion upon this subject.

It is also claimed on behalf of the defendant Matilda, the owner of the property, that there is no evidence to show that she consented to this improvement, as is required by the mechanic's lien law, in order to subject the property to this claim. It appears, however, that she was present at the making of the contract, and almost constantly during the work; that the money was raised by a mortgage upon this property to pay for its construction; and I think the evidence sufficient to establish that she consented to the doing of this work.

As regards the claim by the appellants that the amount of the judgment is excessive, I need only to say that an examination of the evidence shows that there is some evidence tending to establish the claim to the amount for which the judgment was entered, and it is well settled that county courts are not permitted to review the weight of evidence for the purpose of reaching a contrary conclusion. I do not think that errors so prejudicial to the rights of the defendants were committed in the court below as to require the setting aside of its adjudication.

Judgment is therefore affirmed.