JOHN WALLS et al., Respondents, v. GEORGE BAILEY, Appellant.

Parties are presumed to contract in reference to a uniform, continuous and well settled usage pertaining to the matters as to which they enter into agreement, where such usage is not in opposition to well settled principles of law and is not unreasonable. But where the usage is of a particular trade or locality, such presumption is not conclusive and may be rebutted by proof upon the part of one of the contracting parties that he was ignorant of such usage.

Plaintiffs contracted in writing to furnish the materials to do certain plastering for defendant upon his building in Buffalo at so much per square yard. They included in their bills and charged for the full surface of the walls, without deduction for cornices, base boards, or openings for doors and windows. To support these charges they proved under objection that it was the uniform, well settled custom of plasterers in Buffalo so to measure and charge. Held, the evidence was proper, the usage not unlawful or unreasonable, and raised a presumption that defendant contracted with reference to the usage.

To meet this presumption defendant as a witness in his own behalf was asked if at the time of contracting he had any knowledge of the custom claimed. The evidence was excluded. Held, error. (PECKHAM, J., dissenting.)

(The authorities upon the question as to when knowledge is necessary to sustain a usage, collated and discussed.)

(Submitted February 12, 1872; decided May 28, 1872.)

APPEAL from judgment of the General Term of the Superior Court in the city of Buffalo, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was instituted to recover a balance alleged to be due to the plaintiffs for plastering the defendant's house. The

work in question was done under a written contract, of which the following is a copy:

"BUFFALO, N. Y., *January* 18, 1869.

"We hereby agree to do the plastering work of house now being built by George Bailey, on Main street, at the prices named below, viz.:

"For one coat work, twenty-five cents per square yard.

"For two coat work with hard finish, thirty-three cents per square yard.

"The prices to include all labor and cost of material, we paying said Bailey the invoice price for all laths purchased and supplied by him. All work to be done with the 'International Lime Company's' lime; the laths to be securely nailed before plastering, and all work to be done in a good, workmanlike manner, and to the satisfaction of said Bailey.

"Plastering with hydraulic cement, forty-five cents per square yard, to be done in a good, workmanlike manner, and to the satisfaction of said Bailey.

WALLS & LECK."

The plaintiffs claimed that in determining the number of square yards for which they are entitled to pay, under the agreement, the openings, including doors and windows, are to be measured as plastering. That in rooms plastered with two or three coat work, the part of the work behind the cornice and base-board is to be measured as though actually plastered with two or three coats, though the same was only plastered with one coat.

This claim was based on the assumption that at the time the agreement was made it was the custom of plasterers in the city of Buffalo to measure and charge for openings; and for wall not plastered, where the same was covered by a cornice or base-board.

The court allowed proof of such custom to be given on the trial under defendant's objections. Defendant was called as a witness in his own behalf, and his counsel asked him this question: "When you made the contract had you any know-

ledge of any custom in Buffalo of measuring openings in measuring plastering?" This was objected to and the court excluded the testimony. The court charged that the contract was to be construed with reference to the custom of the place where made, that such custom must be reasonable and public, general and uniform, to which defendant excepted. The jury found a verdict for the full amount claimed by the plaintiffs.

*Benjamin H. Williams* for the appellant. The work was done under a contract clear and unequivocal, which could not be varied by parol proof of a custom. (*Gross* v. *Criss*, 3 Grattan [Va.], 26; *Sanford* v. *Rawlings*, 43 Ill., 92; *Cox* v. *Heisley*, 19 Penn., 243; *Barnard* v. *Kellogg*, 10 Wallace, 383; *Thompson* v. *Riggs*, 4 id., 679; *Markham* v. *Jaudon*, 41 N. Y., 235; *Simmons* v. *Law*, 3 Keyes, 393; *Spartale* v. *Bencke*, 10 C. B., 222; *Blacket* v. *The Royal Exchange Assurance Co.*, 2 Crompton & Jervis, 244; *Lombard* v. *Case*, 45 Barb., 95; *Beirne* v. *Dord*, 1 Seld., 155; *Whitmore* v. *South Boston Iron Co.*, 2 Allen, 52; *Barlow* v. *Lambert*, 28 Alabama, 710; *Oelricks* v. *Ford*, 23 How. [S. C.], 49; *Beals* v. *Terry*, 1 Sand., 127; *Thompson* v. *Ashton*, 14 Johns., 317; *Martin* v. *Maynard*, 16 N. H., 165; *Vail* v. *Adams*, 1 Seld., 155; *Dykers* v. *Allen*, 7 Hill, 498; *Wheeler* v. *Newbould*, 16 N. Y., 393; *Merchants' Bank* v. *Woodruff*, 6 Hill, 174; *Mu. Safety Ins. Co.* v. *Home*, 2 Coms., 235; *Wescott* v. *Thompson*, 18 N. Y., 363; *Donnell* v. *Col. Ins. Co.*, 2 Sumner, 377; *In re Reeside*, 2 id., 567; 2 Barn. & A., 746; 7 J., 389; 6 Pick., 131; 1 Dal., 265; 3 Yeates, 318; 6 Bin., 417.) The custom is unreasonable, and courts have frequently refused to enforce such. (*Thomas* v. *Graves*, 1 Rep. Con. Ct., 310; *Hinton* v. *Locke*, 5 Hill., 437; *Hill* v. *Portland, etc., R. R. Co.*, 55 Maine, 438; *Dodd* v. *Furlow*, 11 Allen, 426; *Strong* v. *Grand Trunk R'y Co.*, 15 Mich., 206; *Mussey* v. *Eagle Bank*, 9 Met., 306; *Stover* v. *Lessee, etc.*, 5 Binny, 416; *Bolton* v. *Colder*, 1 Watts, 360; *Miller* v. *Pendleton*, 8 Gray, 548; *Yates* v.

*Pyne*, 6 Taunt, 445; *Bowen* v. *Stoddart*, 10 Met., 375; *Jordon* v. *Meredith*, 3 Yeates, 318; *Cox* v. *Heisley*, 19 Penn., 243.) Knowledge of the customs by the party sought to be charged must be shown, and the presumption of such knowledge may be rebutted. (*Stevens* v. *Reeves*, 9 Pick., 197; *Kirchner* v. *Venus*, 5 Jurist. [N. S.], 395; *Berkshire Woolen Co.* v. *Proctor*, 7 Cush., 429; *Fisher* v. *Sargent*, 10 id., 250; *Wheeler* v. *Newbould*, 5 Duer, 29; *Caldwell* v. *Dawson*, 4 Met. [Ky.], 121; *Leonard* v. *People*, 30 Ga., 61; *Clayton* v. *Gregson*, 5 Ad. & Ellis, 301.)

*David F. Day* for the respondents. The usage of plasterers in Buffalo was properly proven, and the contract is to be construed in reference to it. (2 Parsons on Con., 3d ed., 49; *Sewall* v. *Gibbs*, 1 Hall., 602; BRONSON, J., in *Hinton* v. *Locke*, 5 Hill, 437; see also, opinion of EARL, C., in *Bradley* v. *Wheeler*, 34 N. Y. R., 495; *Eaton* v. *Smith*, 10 Pickering, 150; *Avery* v. *Stewart*, 2 Conn., 69; *Stultz* v. *Dickey*, 5 Binn., 287; *Dalton* v. *Daniels*, 2 Hilton, 472; *Coit* v. *The Comm. Ins. Co.*, 7 Johns., 395; *Astor* v. *The Union Ins. Co.*, 7 Cowen, 202; *Spicer* v. *Hooper*, 1 Q. B., 424; *Chanrand* v. *Augerstein*, Peake's N. R. Cases, 43; *Cochran* v. *Petburgh*, 3 Esp., 121; *Evans* v. *Pratt*, 3 M. & Gr., 759; *Smith* v. *Wilson*, 3 B. & A., 728; *Conner* v. *Robinson*, 2 Hilt. [So. Car.], 354; *Hinton* v. *Locke*, 5 Hill., 437; *Baker* v. *McKelvay*, 2 N. J., 165; *Soutier* v. *Kelleman*, 18 Miss., 509.) Defendant was bound to know the custom of the trade with which he dealt. (*Whitehouse* v. *Moore*, 13 Abb. P. R., 142; *Pollock* v. *Stables*, 12 Q. B., 765; Parsons on Contract, 3d ed., vol. 2, p. 57; *Clayton* v. *Gregson*, 5 A. & El., 302; *Hinton* v. *Locke*, 5 Hill, 437.)

FOLGER, J. The contract between the parties was in writing. By it the plaintiffs were to furnish the material for the plastering work of the defendant's house, and to do the work of laying it on. The defendant was to pay them for the work and material a price per square yard. Of course,

the total of the compensation was to be got at by measurement. But when the parties came to determine how many square yards there were, they differed. The query was, the square yards of what? Of the plaster actually laid on, or of the whole side of the house, calling it solid, with no allowance for the openings by windows and doors?

And it is not to be said of this contract, that it was so plain in its terms as that there could be but one conclusion as to the mode of measurement, by which the number of square yards of work should be arrived at. It is in this case as it was in *Hinton* v. *Locke* (5 Hill, 437). There the work was done at so much per day. The parties there differed as to how many hours made a day's work. That is, what should be the measurement of the day? And there, evidence of the usage was admitted, not to control any rule of law, nor to contradict the agreement of the parties, but to explain an ambiguity in the contract. And the proof showing a usage among carpenters that the day was to be measured by the lapse of ten hours, it was held a valid usage; and the contract was interpreted in accordance with it.

So in *Ford* v. *Tirrell* (9 Gray, 401), the contract was to build the wall of an octangular cellar, at the rate of eleven cents per foot. The only question was as to the mode of measurement. The defendant contended that the inner surface of the wall should be the rule. The plaintiff claimed that an additional allowance should be made for the necessary work at the angles to support the building. It was held that the agreement as to the compensation was equivocal and obscure, and that it was competent to prove a local usage of measuring cellar walls, in order to interpret the meaning of the language, and to ascertain the extent of the contract.

So in *Lowe* v. *Lehman* (15 Ohio St., 179), in a contract to *furnish and lay up* brick at so much *per thousand*, the controversy was as to the proper mode of counting. Evidence of a local usage, to estimate by measurement of the walls, on a uniform rule, based on the average size of brick, making slight additions for extra work and wasteage, deducting for

openings in wall, but not for openings in chimneys nor jambs, nor for caps, sills nor lintels, was admitted as not unreasonable. So in *Barton* v. *McKelway* (2 Zabriskie, 22 N. J., 165), in a contract to deliver certain trees from a nursery, they were to be not less than one foot high. The dispute was as to the measurement; and evidence was held competent of a usage in that trade to measure only to the top of the ripe, hard wood, and not to the tip of the tree. (See, also, *Wilcox* v. *Wood*, 9 Wend., 346; *Grant* v. *Maddox*, 15 M. & W., *737.)

So in the case before us. How shall the number of the square yards of work done be ascertained, is not so determinately reached by the language of the contract as that the law can say there was but one method in the minds of the parties, and this is it.

And from the cases above cited, it appears that the meaning of words may be controlled and varied by usage; even when they are words of number, length or space, usually the most definite in language.

Every legal contract is to be interpreted in accordance with the intention of the parties making it. And usage (*with a limitation hereafter noticed*), when it is reasonable, uniform, well settled, not in opposition to fixed rules of law, not in contradiction of the express terms of the contract, is deemed to form a part of the contract, and to enter into the intention of the parties. (Starkie on Ev., 637, *710; *Williams* v. *Gilman*, 3 Greenl., 276.) Parties are held to contract in reference to the law of the State in which they reside. For all men, being bound to know the law, are presumed beyond dispute, to contract in reference to it. And so they are presumed to contract in reference to the usage of the particular place or trade in or as to which they enter into agreement (1 Greenl. on Ev., §§ 292–294; Broom's Leg. Max., 682, *889, 890), when it is so far established and so far known to the parties that it must be supposed that their contract was made in reference to it. (2 Parsons on Cont., 541, and cases cited.)

Evidence of usage is received, as is any other parol evidence, when a written contract is under consideration. It is to apply the written contract to the subject-matter, to explain expressions used in a particular sense, by particular persons, as to particular subjects, to give effect to language in a contract as it was understood by those who made use of it. (Per Savage, Ch. J.; *Boorman* v. *Johnston*, 12 Wend., 573.)

The jury, in the case before us, have found the existence of the usage contended for by the plaintiffs, and upon evidence which well sustains the finding. The same evidence shows that the usage was uniform, continuous and well settled. Nor was it one which was in opposition to well settled principles of law, or which was unreasonable. The appellant has cited to us *Jordan* v. *Meredith* (3 Yeates, 318), in which it is said that the pretended usage of plasterers to charge for a part of the openings is unreasonable and bad. The reason there given why it is so, is that it is the height of injustice to charge an employer with materials never furnished. But as to this case, it is to be remarked that this expression is *obiter*. For it did not appear that the jury found that there existed the usage commented upon; and the decision of the case is put upon the ground that there was no proof that the jury had been governed by a usage. Again; the remark is confined to a consideration of the material furnished; whereas, the usage claimed in the case before us is concerned as well with labor performed. And the usage is not designed to obtain payment for material never furnished. It is a method devised for more conveniently and readily ascertaining the quantum of compensation for what work has been done in fact, and what material has been in fact furnished. It is agreeable with common sense that it is more difficult, asking more skill and care, requiring more time, to plaster about the frames of doors and windows, and along the edges of base-boards and cornices, than over the plain uninterrupted surface of wall or ceiling. The more then, of such openings or obstacles, the more, in proportion to the space of plaster actually laid on, should be the compensation. And it matters

not in law, nor in reason, how the amount of that greater compensation is arrived at; whether by a minute and precise calculation of part plain and of part broken space, at a greater price for the square yard of space actually covered, or by an assumption that the whole surface worked upon is plain, and then payment be made for it at a less price per square yard thereof.

The aim which the usage takes, is at a compensation which shall be just to employer and employed. The mode of reaching it, proposed by the usage, does not infringe upon any principle of law; for it is but a mode. It is not unreasonable; for the price per square yard will, in the rivalry of competition for the work, be made to agree in amount with the method used of ascertaining the number of yards. And the difference in amount of material furnished will be but a make-weight in determining the compensation for the labor performed. (And see *Lowe* v. *Lehman, supra.*)

These views dispose of the points made by the appellant in this court, save the one that the trial court erred in overruling the question put to the defendant when on the stand as a witness in his own behalf, to wit: "When you made that contract, had you any knowledge of any custom in Buffalo of measuring openings in measuring plastering?"

It does not appear, from the printed case, on what ground the objection to the question was put by the plaintiffs, nor on what ground it was disposed of by the court.

It will be observed that the inquiry calls for ignorance of *custom*. A technical ruling would dispose of the point adversely to the appellant. For strictly speaking, *custom* is that length of *usage* which has become law. It is a usage which has acquired the force of law (Bouvier Law Dictionary, *voce*, "Custom;" *Hursh* v. *North*, 40 Penn. St., 241); and ignorance of the law will not excuse. A general custom is the common law itself, or a part of it. Thus the allowance of days of grace, on a bill or note, is a custom of merchants; but it is established by a usage so general, so long continued, so pervading the whole commercial world, that it

is universally understood to enter into every bill or note of a mercantile character; and to form so completely a part of the contract that the bill or note does not become due, in fact or in law, on the day mentioned on its face, but on the last day of grace. (*Bk. of Wash.* v. *Triplett*, 1 Peters [U. S.], 25; *Bodfish* v. *Fox*, 10 Shepley, 23 Maine, 90; and see, per Chancellor, *Sleght* v. *Hartshorne*, 2 J. R., 540, *541.) In such a case, a party would not be heard to say that he was ignorant of the custom. But the words custom and usage are often used in the books as convertible terms. It is evident that, throughout the trial in this case, the word custom was used as synonymous with word usage. It is proper then, to treat the question as calling for the ignorance of the defendant of any usage, existing in Buffalo in the trade of the plaintiffs, such as was claimed by them. And without doubt, it was the purpose of the trial court to hold that the defendant could not make proof of his ignorance in fact of the usage which had been shown by the plaintiffs; and thus a question is raised, which, from the expressions used in many decisions, is not to be determined without a seeming departure from some previous holdings. There are many cases in which the language used would seem to indicate that the existence of a usage of a trade, profession or locality having been shown, the presumption indisputable arises that the parties did contract in reference to it. Thus, in *Sewell* v. *Corp.* (1 Carr. & P., 392), BEST, Ch. J., says: If there is a general usage, applicable to a particular profession, parties employing an individual are supposed to deal with him according to that usage. So in *Mayor, etc.,* v. *O'Neill* (1 Penn. St., 342), it is said: All trades have their usages; and when a contract is made with a man about the business of his craft, it is framed on the basis of its usage, which becomes part of it, except when its place is occupied by particular stipulations. It is apprehended that this form of expression means only this: that the facts and circumstances of the case are such, that the usage is of so long continuance, so well established, so notorious, so universal and so

reasonable in itself, as that the presumption is violent that the parties contracted with reference to it, and made it a part of their agreement. There are cases, too, where such form of utterance has been used in which both parties were of the same trade or kind of business; and, therefore, the usage proven was of the technicalities of their calling, of which it was held they might not profess ignorance. There are cases, too, of principal and agent, where one has been set by another to do acts in a particular business, to be done at a particular locality, as on stock exchange, where the power to deal is a privilege obtained by payment of a fee, and is restricted to a body which has, for its regulation and government, come under certain prescribed rules or established usages; and, as the agent could not do the will of his principal, nor could the principal himself, save in conformity with those rules or usages, it is held that the principal must be bound thereby, whether cognizant of them or not; and that ignorance will not excuse him. (*Pollock* v. *Stables*, 12 Q. B., 765.) It is to be considered too, that these decisions (many of them certainly) were of a time when parties were not, as a general rule, called to testify in their own behalf, and when express evidence of knowledge or of ignorance of a usage could not ordinarily be given; and when the fact of knowledge or of ignorance was to be reached only as the result of a presumption or inference from the other facts established in the case. Doubtless, if a custom is ancient, very general, and well known, it will often be a presumption of law, that the party had knowledge of it. (See *Clayton* v. *Gregson*, 5 A. & E., 302.)

It would seem however, that upon principle, for a party to be bound by a local usage, or a usage of a particular trade or profession, he must be shown to have knowledge or notice of its existence. (Id.) For upon what basis is it that a contract is held to be entered into with reference to, or in conformity with, an existing usage? Usage is engrafted upon a contract or invoked to give it a meaning, on the assumption that the parties contracted in reference to it; that is to say,

that it was their intention that it should be a part of their contract wherever their contract in that regard was silent or obscure. But could intention run in that way unless there was knowledge of the way to guide it? No usage is admissible to influence the construction of a contract unless it appears that it be so well settled, so uniformly acted upon, and so long continued, as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference thereto. (See *Rushforth* v. *Hadfield*, 7 East, 224.) There must be some proof that the contract had reference to it, or proof arising out of the position of the parties, their knowledge of the course of business, their knowledge of the usage, or other circumstance from which it may be inferred or presumed that they had reference to it. (*Bodfish* v. *Fox*, *supra*, p. 96.)

Frequent are the expressions in the later authorities that, where the usage is of a particular trade or locality, it must appear that it was known to a party before he is bound by it, so as to make it a part of his contract. In *Bradley* v. *Wheeler* (44 N. Y., 500) it is said, though not perhaps absolutely necessary to be said in the decision of that case, that local custom could not affect the plaintiffs without proof that they had knowledge or notice of it. In *Higgins* v. *Moore* (34 N. Y., 425) it is said (with the same qualification, it is to be received, however): "The usage being local, its existence must be clearly proved to have been known to the plaintiffs at the time." And it appears that in that case the plaintiffs showed affirmatively, that they understood the usage to be the reverse of that set up by the defendants and found by the referee to exist. In *Esterly* v. *Cole* (3 Coms., 502) it is said that, where there is a general usage in any particular trade or branch of business to charge or allow interest, parties having knowledge of the usage are presumed to contract in reference to it. And again, in the same case, that if proof of the existence of the usage had been followed with proof that the defendant had knowledge thereof, the case would have been made out.

In *Dawson* v. *Kittle* (4 Hill, 107) it is said that the usage must be known to the party at the time of contracting, or he must be presumed to have known and assented to it. In *Wheeler* v. *Newbould* (5 Duer, 29) it is expressly held that proof of a local usage can never be received to vary the construction which the law would otherwise give to a contract, unless it is clearly proven that its existence was known to the parties, and that their contract was made in reference to its terms. The judgment in the case last cited was affirmed in this court (16 N. Y., 392). The usage sought to be availed of was here pronounced illegal and void; and the holding above extracted was not noticed.

*Kirchner* v. *Venus* (12 Moore Priv. Coun. Cases, 361) was a case in which a usage of shipping merchants at Liverpool was shown, to affect a question of freight to Sydney, in New South Wales, against a party living at the latter place. Proof was admitted to show that the usage was unknown at Sydney. It was held that this proof was prevalent, and that evidence of the usage of a particular place is admitted only on the ground that the parties who contracted are both cognizant of the usage, and must be presumed to have made their agreement in reference to it. In *Caldwell* v. *Dawson* (4 Metc. Ky., 121) it is held, that it must appear that the party had actual knowledge of the usage, or the evidence must be such as to clearly authorize the presumption that he had knowledge of it. And further, that the fact that one party had knowledge of the usage, and supposed that it would enter into the contract, is not sufficient.

In *Barnard* v. *Kellogg* (10 Wallace, 383) it is said, that usage is used as a mode of interpretation, on the theory that the parties knew of its existence, and contracted with reference to it; and that the conduct of the parties in that case showed clearly that they did not know of this custom, and could not therefore have dealt with reference to it. (See also, *Martin* v. *Maynard*, 16 N. H., 166; *Dodge* v. *Favor*, 15 Gray, 82; *Fisher* v. *Sargent*, 10 Cush., 250; *Stevens* v. *Reeves*, 9 Pick., 200.)

Not only the existence of such a usage, but whether knowledge of it exists in any particular case, is a question of fact for the jury. (10 Cush., *supra; Winsor* v. *Dillaway*, 4 Metc., 221.)

Of course then, it is to be established or negatived in all its essentials, as well as to knowledge as to any other, by the same character and weight of evidence as are necessary to maintain other allegations of fact. It may be established by presumptive, as well as by direct, evidence. Nor, on the other hand, is it exempt from the difficulty, that a presumption may not prevail against direct evidence to the contrary of it. The jury may presume, from all the circumstances of the case, that knowledge or notice existed. Thus, in the case before us, it was in proof that this usage had existed in Buffalo for twenty years or over, that the defendant did then reside in that city, and had resided there for ten years, and that he had been reared as an engineer and builder. From these and other facts in the case, the jury might have made a legitimate presumption, that the defendant came into this agreement with knowledge or notice, and in view of the existence of this usage. But it would have been a presumption, and of fact.

We have seen that there are usages which have become so general and so universally received and acted upon, as that they have become a part of the common law, and no one can be heard to profess ignorance of them. But it is equally true that there are usages so restricted as to locality, or trade, or business, as that ignorance of them is a valid reason why a party may not be held to have contracted in reference to them. There are many cases of this kind collected in notes in Broom's Legal Maxims. (See p. 684 [*691], notes 2 and 3.)

It seems then, to come to this: Is the presumption, which the jury may thus make conclusive, or may not that presumption be repelled by express negatory proof of ignorance? When the defendant proposed, by the question which was rejected, to offer evidence tending to show his ignorance of the existence of the usage, he claimed no more than to exer-

cise the right of attempting, by direct evidence, to repel the presumption of his knowledge, which might without that proof, or perhaps in opposition to it, be made from the facts of the case.

It is for the jury then, under proper instructions from the court, to take all the evidence in the case; that as to the existence, duration and other characteristics of the custom or usage, and that as to the knowledge thereof of the parties; and therefrom to determine whether there is shown a custom of such age and character, as that the presumption of law will arise, that the parties knew of, and contracted in reference to it; or whether the usage is so local and particular, as that knowledge in the party to be charged, must be shown affirmatively or may be negatived.

In this view it was proper for the defendant to put and answer the question rejected. For the jury had yet to determine the question of the existence and characteristics of the usage or custom; and as it was not to be assumed what their verdict thereon would be, it was needful that they have before them all the elements, offered by either party, which would assist in the correct determination of all the questions which could arise.

In my judgment, the trial court should have admitted the question.

For this reason, the judgment should be reversed and a new trial ordered, with costs to abide the event of the action.

All concur, except PECKHAM, J., dissenting.

Judgment reversed.