WILLIAM J. UNDERWOOD et al., Executors, etc., of EMORY M. VAN TASSEL, Deceased, Respondents, *v.* THE GREENWICH INSURANCE COMPANY, Appellant.

1. INSURANCE — BINDING SLIP — CUSTOM — PAROL EVIDENCE.  A "binding slip," issued by an insurance company to insurance brokers, commencing with the word "insure," specifying certain property, giving the name of the owner, expressing a specified sum and a period of twelve months, but adding "this memo. to be void on delivery of the policy," is not on its face such a perfect and complete contract of insurance as to preclude parol evidence of a usage between insurance brokers and insurance companies and of an actual intention of the parties that the slip should be binding only until action upon a pending application for renewal of a policy, and should not survive the rejection of the application and notice to that effect to the insured.

2. BINDING SLIP — CHARACTER OF — AS A RENEWAL.  A renewal of a policy of insurance is not made by a "binding slip" issued by an insurer to brokers, which does not upon its face purport to be a renewal, and stipulates that a prior renewal shall not be in force; but it will be deemed to have been intended as the basis of a new contract of insurance, to be followed, in case of acceptance of the risk, by a policy in the usual form, rather than as a renewal of a former policy — especially where there were two prior renewals, which were very different in form from the slip, and plainly showed their character on their face.

*Van Tassel* v. *Greenwich Ins. Co.*, 28 App. Div. 163, reversed.

(Argued December 11, 1899; decided January 9, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 21, 1898, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed by the court.

This action was brought to recover on a contract of fire insurance.

The facts, so far as material, are stated in the opinion.

*John Notman, William Allen Butler* and *Henry G. Ward* for appellant. The undisputed evidence showed that the so-called " binding slip " or " binder " was an instrument peculiar to the fire insurance business in the city of New York, constituting an application for insurance for which a policy was thereafter to be issued. It contained terms requiring an explanation. The defendant was entitled to give in evidence all the facts, conversations and circumstances attending its signing and delivery, and the trial court erred in excluding such evidence. (*Blossom* v. *Griffin,* 13 N. Y. 569 ; *Chapin* v. *Dobson,* 78 N. Y. 74 ; *Juilliard* v. *Chaffee,* 92 N. Y. 529 ; *Emmett* v. *Penoyer,* 151 N. Y. 564 ; *Dodge* v. *Zimmer,* 110 N. Y. 43 ; *G. M. Co.* v. *Hammond Co.,* 12 App. Div. 294 ; *McClanathan* v. *Friedel,* 85 Hun, 175 ; *Woolsey* v. *Funke,* 121 N. Y. 87 ; *Ins. Co.* v. *Dutcher,* 95 U. S. 269.) The trial court erred in refusing to permit the defendant to prove the usage and custom existing at the time of the transaction between insurance brokers and fire insurance companies in the city of New York applicable to " binding slips " or " binders." ( *Walls* v. *Bailey,* 49 N. Y. 464 ; Starkie on Ev. 637, 710, 891 ; 1 Greenl. on Ev. §§ 292–294 ; Broom Leg. Max. 682, 889, 890 ; 2 Pars. on Cont. 541 ; *Atkinson* v. *Truesdell,* 127 N. Y. 230 ; *Dana* v. *Fiedler,* 12 N. Y. 40 ; *Collender* v. *Dinsmore,* 55 N. Y. 200 ; *Silberman* v. *Clark,* 96 N. Y. 522 ; *Newhall* v. *Appleton,* 102 N. Y. 133 ; *Hopper* v. *Sage,* 112 N. Y. 530 ; *Smith* v. *Clews,* 114 N. Y. 190.)

*George Richards* for respondents. It was not error to sustain the objection to the questions by which the defendant sought to prove custom. (*Lipman* v. *N. Y. Ins. Co.,* 121 N. Y. 454 ; *Karelsen* v. *S. F. Office,* 122 N. Y. 545 ; May on Ins. [3d ed.] §§ 44–59 ; *Van Tassel* v. *G. Ins. Co.,* 72 Hun, 145 ; *Hermann* v. *N. F. Ins. Co.,* 100 N. Y. 411 ; *Fuller* v. *Robinson,* 86 N. Y. 309 ; *Higgins* v.

*Moore,* 34 N. Y. 422; *Bigelow* v. *Legg,* 102 N. Y. 652; *O'Donohue* v. *Leggett,* 134 N. Y. 40; *Rickerson* v. *H. F. Ins. Co.,* 149 N. Y. 315; *Walls* v. *Bailey,* 49 N. Y. 469.) It was not error to sustain the objection to the questions by which it was sought to show contemporaneous conversations as to the term or life of the contract. (*Thomas* v. *Scutt,* 127 N. Y. 133; *Atkinson* v. *Truesdell,* 127 N. Y. 230; *Humphreys* v. *N. Y., L. E. & W. R. R. Co.,* 121 N. Y. 435; *M. M. Ins. Co.* v. *Lyman,* 15 Wall. 664.) It is wholly immaterial that the plaintiff tendered the wrong amount of premium or furnished erroneous proofs of claim, for the company positively refused to pay and cannot take advantage of any error in the tender or in the proofs. (*K. L. Ins. Co.* v. *Pendleton,* 112 U. S. 696; *Stokes* v. *Mackay,* 147 N. Y. 235; *H. Ins. Co.* v. *Adler,* 71 Ala. 516; *H. C. & C. Co.* v. *P. Ins. Co.,* 41 Mo. App. 530; *Hartley* v. *James,* 50 N. Y. 38; *M. L. Ins. Co.* v. *Smith,* 44 Ohio St. 156; *Miagham* v. *H. F. Ins. Co.,* 24 Hun, 61; *McMaster* v. *Ins. Co.,* 55 N. Y. 222; May on Ins. § 469; *Ball* v. *A. Ins. Co.,* 20 Fed. Rep. 236.) Where the insurer denies all liability the right of action under the policy accrues immediately and interest begins to run from the date of such denial. (Biddle on Ins. § 1145; 2 May on Ins. § 469; *L. Ins. Co.* v. *Pendleton,* 112 U. S. 709; *Tripp* v. *P. F. Society,* 140 N. Y. 26; *McNally* v. *P. Ins. Co.,* 137 N. Y. 398; *Stickley* v. *M. Ins. Co.,* 22 Ins. L. J. 768; *S. Ins. Co.* v. *Maackens,* 9 Vroom, 564; *C. F. Ins. Co.* v. *Allen,* 80 Ala. 571; *G. Ins. Co.* v. *Gibson,* 53 Ark. 494; *G. H. Ins. Co.* v. *Jacobs,* 56 Tex. 366; *W. C. Ins. Co.* v. *Cary,* 83 Ill. 453.) The elements necessary to a waiver or an estoppel as against the plaintiff are wholly lacking in this case. (*Van Tassel* v. *G. Ins. Co.,* 151 N. Y. 134; *Darnley* v. *L. C. & D. Co.,* 2 H. L. Cas. 43; *Hoxey* v. *H. Ins. Co.,* 32 Conn. 21; *Dietel* v. *A. Ins. Co.,* 58 Penn. St. 444; *Finaerson* v. *M. F. Ins. Co.,* 57 Vt. 520; *Armstrong* v. *A. Ins. Co.,* 130 N. Y. 560; *Devans* v. *M. & T. Ins. Co.,* 83 N. Y. 173; *Ronald* v. *M. R. F. L. Assn.,* 132 N. Y. 384.)

O'BRIEN, J.   In this case the trial court directed a verdict for the plaintiff for nearly fourteen thousand dollars for a loss arising upon a contract of insurance.   The defendant's counsel excepted to this direction and requested the court to submit the case to the jury, which request was refused and an exception taken.   The learned trial court virtually held that none of the facts pleaded, or as to which proof was offered, constituted any defense to the action.   The proof offered by the defendant was excluded upon the plaintiffs' objection, and to this ruling in various forms an exception was taken.

It is alleged in the complaint that on or about the 11th day of January, 1889, the defendant delivered to the plaintiffs' intestate its policy of insurance in the standard form, whereby it insured his building for the sum of ten thousand dollars for one year from the first of January of that year.   It then alleges that this policy was renewed during the two following years by two successive renewals, and receipts delivered by the defendant to the plaintiff's intestate as owner of the property.   The most material allegation then follows, which is that the defendant, on or about the 1st of January, 1891, executed and delivered to the plaintiff in the form of a binding slip a further renewal of the policy for another term of one year, which expired on the first of January, 1892.   This binder or binding slip, as it is called in the pleading, appears in the record and is in the following words:

" BEECHER & BENEDICT, New York:                 189

" Insure E. M. Van Tassel $10,000 for 12 months on Building N. E. corner 13th Ave. & W. 11th Street, N. Y. City, In Store Binding this 1 day of January, at noon (this memo. to be void on delivery of the policy at the office of Beecher and Benedict).

"Company.                 Amount.          Accepted.
" Greenwich.               $10,000.
" Renewal.
" 559298 not in force.                      WM. ADAMS."

There is some confusion in the dates of the two renewals appearing in the record when compared with that of the

original policy, which may be accounted for either by a mistake of the printer, or, as is more probable, by the withdrawal or cancellation by the defendant of the last renewal receipt sent out by mistake and the substitution of the binder in place of it, since the latter states, in the last clause, that the renewal is *not in force*.  But this is not material, except possibly so far as the intention of the defendant not to renew the old policy is disclosed.  If it was the intention of the parties to renew the old insurance, that would have been accomplished by allowing the last renewal receipt to remain in force and the binder would have been unnecessary.

The defendant denied that it ever made or delivered the contract upon which the action is based, and for a separate defense alleged the following facts, viz. : That on or about the 30th day of December, 1890, the plaintiff, through his brokers, applied to the defendant for insurance of $10,000 on the premises in question for one year from the 1st of January following; that, upon such application and in connection therewith, the brokers submitted to the defendant an application form of such proposed insurance, and at the same time requested that the defendant give them what is known as a binding slip to cover temporarily said risk pending the consideration of such application by the defendant, in accordance with the practice, usage and understanding then existing and prevailing in the city of New York between insurance brokers and insurance companies, then and there well known to plaintiff's said brokers, namely, that in case said application was declined by the defendant, and notice of declination was given to such brokers, said binding slip immediately then and there ended and fell and no premium was charged for the time that the same was in force, and that in case said application was accepted a policy of insurance in the New York standard form should be issued, as of the date when the application was made, the binding slip thereupon merging in said policy and premiums to be paid from the time the binding slip took effect.  The answer then proceeds to state that when this application was made to the defendant by the brokers it did

53

not accept the same, but took it under consideration, and upon the request of the brokers, and in accordance with such usage, practice and understanding, and not otherwise, it gave to them a binding slip on a form prepared and presented to it by the brokers, which is the binder above set forth.    It is then alleged that the binding slip was not a contract or agreement for one year's insurance, and that the words, "Insure E. M. Van Tassel $10,000 for 12 months" therein contained simply denoted that pending the defendant's consideration of the application it insured the plaintiffs' intestate in that amount in the meantime until it should decline the application or until it should accept the same and issue a policy therefor in accordance with the usage, practice and understanding above set forth; that the binding slip was so signed and issued by the defendant and was so accepted by the brokers under such usage, practice and understanding and not otherwise.    It is then alleged that the defendant on the 7th day of January following, having in the meantime considered such application and decided to decline it, notified the brokers in writing that such application for ten thousand dollars of insurance for the plaintiff was declined, and that according to the custom and usage existing in the insurance business in the city of New York, the binding slip and insurance carried thereby was held terminated, and ended upon such notice; that this understanding and usage was known and understood by the brokers, who accepted the declination and acquiesced in the same, and thereupon attempted to procure insurance for the plaintiff elsewhere.    It is further stated in the answer that the defendant sent with the notice of declination to the brokers an offer to accept a five-thousand-dollar risk if wanted by the plaintiffs' intestate, but that such offer was not accepted by the brokers, nor was any notice of acceptance given to the defendant. The notice referred to in the answer appears in full in the record, bears date January 7, 1891, and is addressed to the brokers in the form of a letter signed by the defendant's secretary, the body of which is in the following words: "Your application for renewal of insurance for E. H. Van Tassel, at

n / e cor. 13 Ave. & W. 11 St. is declined for $10,000, would renew for $5,000 if wanted. You will, therefore, consider that the risk is not held binding by this company for more than $5,000." It appears from the pleading and proof given at the trial, that on the 13th or 14th of January, 1891, the premises mentioned in the binding slip were destroyed by fire, and that the owner was damaged thereby in a sum exceeding any insurance in force covering the property.

In the form in which the case is presented by the record the question really is whether the facts stated in the answer above referred to constituted any defense to an action based upon the binding slip above described. The view of the learned court below that reviewed the case upon appeal seems to be that this paper constituted a contract between insurer and insured so complete and perfect in its character and terms that it could not be affected or explained by any evidence of usage, though known and understood by both parties, nor by parol evidence as to the purpose for which it was delivered, or the scope and effect which it was intended to have by the mutual agreement of the parties at the time of delivery.

Before proceeding to discuss the question involved in the case it may be well to note with all distinctness what this case was and what we decided when it was here upon the former appeal (151 N. Y. 130). In the action as then presented the plaintiff sought to recover five thousand dollars upon the alternative proposition for insurance contained in the letter above quoted. The trial court held that inasmuch as this proposition had never been accepted, it did not bind the defendant, and so the plaintiff's complaint was dismissed. This court held, as I understand the opinion, that there could be no recovery upon this unaccepted proposition of the company, and if there could be a recovery at all it must be not upon the letter but upon the binder. The case comes here now upon an amended complaint and a new answer interposing a new defense presenting issues of fact and law that in the nature of things could not have been considered or decided upon the former appeal. It is very correctly stated in the

opinion of the court below that on the former action this court did not undertake to give definition to the full contract relations between the parties and arising upon the binding slip, inasmuch as it was not determined whether the binding slip was a renewal of the policy or an independent contract of insurance. It is very evident, as the learned court there remarked, that it was either one or the other. It may also be observed that the learned court below did not attempt to give any definition of the relations of the parties in that respect either, contenting itself with the statement that if it were a renewal, then the insurance effected by it became subject to all the conditions of the policy, while if an independent arrangement it amounted to a contract of insurance subject to the terms and conditions of the usual policy issued by the defendant. (*Lipman* v. *Niagara F. Ins. Co.*, 121 N. Y. 454; *Karelsen* v. *Sun Fire Office of London*, 122 N. Y. 545.)

The first step in the discussion would, therefore, seem to be to ascertain what this binding slip really imports and what is its true scope and legal effect, whether a renewal of an old policy, or the basis of a new one, whether the defendant was entitled to give proof of the agreement and understanding between the parties when it was delivered and of any known or established usage existing with respect to its effect in the city where the transaction took place. It is said that the binding slip in and of itself is such a complete and perfect instrument that it embodies all the mutual stipulations of the parties and hence cannot be affected by any parol proof, whether it be established usage or actual agreement at the time of delivery. I think it is quite reasonable to assume that this paper is not evidence of any agreement to renew an old policy. It does not upon its face purport to be a renewal, but, on the contrary, if the closing words mean anything at all, they indicate that it was not intended as a renewal. Moreover, there had been two prior renewals of the only policy which appears to have been delivered by the defendant. Both of those renewals appear in the record and they are very

different instruments from the binder, so called. These renewal receipts, by the plainest terms appearing upon their face, purport to be renewals of a pre-existing policy. They are stated to be renewals in large headlines and they purport in terms to renew a policy the number of which is described, as well as the consideration for the renewal, and every other fact necessary to constitute a complete contract of renewal between insurer and insured. When these two papers are compared with the binder, it would be scarcely possible to conclude that they were all intended for the same purpose. The binder was evidently intended as the basis of a new contract of insurance. to be followed necessarily, in case of an acceptance of the risk by the company, by a policy in the usual form.

If the facts stated in the defendant's answer constitute any defense whatever to the action on this instrument, it is apparent that the judgment entered upon the direction of the verdict cannot be permitted to stand, since proof was offered by the defendant of substantially every fact contained in the answer. This proof was excluded under exception. We think that the answer contained a defense and that the proof offered was competent. The contention that a paper of this character standing alone is a perfect and complete contract of insurance, not admitting of parol proof to show the purpose for which it was delivered, or the established usage of the business to explain it, is not reasonable, and no authority can be found to sustain it. Indeed, it may be very safely asserted that without proof of this kind, the paper itself is scarcely intelligible. The ruling of the trial court cannot be upheld by the rule which forbids the introduction of parol evidence to vary or contradict a written agreement. One of the cases cited in the court below is *Lipman* v. *Niagara F. Ins. Co.* (121 N. Y. 454). The action in that case was upon a binding slip much more complete and perfect in form than that now under consideration, and speaking of its legal effect Judge ANDREWS said : " The binding slip signed by the defendant was not a mere written agreement to insure, but was a present insurance

to the amount specified therein.   The instrument is informal.
It states on whose account the insurance is made, the property
covered, the amount insured, the term of insurance and the
date.   But it does not specify the risk insured against, nor
does it contain any conditions such as are usually found in
insurance policies.   The evident design of the writing as dis-
closed by the testimony, was to provide temporary insurance
pending an inquiry by the company as to the character of the
risk, or, if that was known, during any delay in issuing the
policy."   Now that is precisely the meaning and effect
ascribed to the binding slip in this case according to the con-
tention of the defendant.   In the case cited the binding slip
is said to be evidence of present insurance.   The defendant
admits that this paper is evidence of present temporary insur-
ance pending an inquiry as to the risk and terminating *eo
instanti* upon notice, as was held in that case.   So in that
case it appeared that parol testimony was given to explain the
purpose for which the paper was delivered, and this court
said that the evident design of the writing as *disclosed by the
testimony* was to provide temporary insurance pending an
inquiry by the company as to the character of the risk.

An informal paper of this character generally denotes what-
ever the purpose intended by the parties at the time of its
delivery was, and its legal effect as an agreement must, in the
nature of things, be effected by known and established custom.
But perhaps the most obvious answer to the contention of the
learned counsel for the plaintiffs, that this slip is in itself evi-
dence of a complete and perfect contract, is to be found in the
fact, clearly disclosed by the record, that he was himself unable
at the trial to make out his case by its mere production.   It
will be seen that the paper does not upon its face express any
consideration whatever, and that essential element of all con-
tracts is as necessary in a contract of insurance as in any other
contract.   It contains no conditions such as are usually found
in insurance policies, and upon breach of which the contract
terminates.   All these elements of the contract of insurance
the plaintiff was obliged to supply at the trial by proof

· *dehors* the writing in question. The consideration for the agreement is supposed to have been made out by proof of the premium charged on the old policy and in the two subsequent renewals. It may be true as matter of fact that the renewal of an insurance contract is based upon the consideration expressed in former renewals, or in the original policy, but the law does not draw any such inference from the papers themselves when nothing is said about consideration. When the element of consideration is sought to be established in that way the proof is always directed to what is supposed to be the actual intention of the parties to be found from the circumstances. Thus, in order to show the conditions upon which the defendant assumed the risk in question, the plaintiffs' counsel was obliged to put in evidence a policy in the standard form. All this shows that the binding slip did not embody the mutual stipulations of the parties, and, hence, standing alone was not a complete and perfect contract, but was open to explanation by parol proof as to the intention of the parties and the established custom of the business, and if proof of that kind was admissible for the plaintiff, as it certainly was, it is equally clear that it was admissible in behalf of the defendant.

That contracts or written instruments in form much more perfect and complete than this binding slip may be affected by parol proof as to the design which the parties had in view when they were delivered, and by proof of known and established custom, is a principle of evidence so well established that citation of authorities would seem to be unnecessary. Two of the present members of this court have, however, quite recently stated the principle, and it will be quite sufficient to quote their language and the authorities there cited. In *Newhall* v. *Appleton* (114 N. Y. 140) Judge PARKER said: "Every legal contract is to be interpreted in accordance with the intention of the parties making it. And usage, when it is reasonable, uniform, well settled, not in opposition to fixed rules of law, not in contradiction of the express terms of the contract, is deemed to form a part of the contract and to enter

into the intention of the parties, when it is so far established and so far known to the parties that it must be supposed that their contract was made in reference to it. ( *Walls* v. *Bailey*, 49 N. Y. 464–469; Starkie on Ev. 637, 710; 1 Greenl. on Ev. §§ 292–294; Broom Leg. Max. 682, 889, 890; 2 Parsons on Cont. 541.)" In *Atkinson* v. *Truesdell* (127 N. Y. 230) Judge HAIGHT said: " Parol evidence may be given as to the uniform, continuous and well-settled usage and custom pertaining to the matters embraced in the contract, unless such usage and custom contravene a rule of law, or alter or contradict the expressed or implied terms of a contract, free from ambiguity. (*Dana* v. *Fiedler*, 12 N. Y. 40; *Walls* v. *Bailey*, 49 id. 464; *Collender* v. *Dinsmore*, 55 id. 200; *Silberman* v. *Clark*, 96 id. 522; *Newhall* v. *Appleton*, 102 id. 133; S. C., 114 id. 140; *Hopper* v. *Sage*, 112 id. 530–535; *Smith* v. *Clews*, 114 id. 190.) "

The right of the defendant to give parol proof of the actual intention and design of the parties at the time of the delivery of the binding slip is equally clear. It was once debated whether a deed absolute upon its face could be shown to have been in fact intended as a mortgage. This court has sanctioned such proof in numerous cases, embracing a great variety of contracts much more complete and formal than that now in question. It has been held that a written instrument might be affected by proof that it was delivered for some special purpose different from that appearing upon its face. Hence it has been held that a party sued upon a bond or other instrument might show as between the parties that it was delivered conditionally. When the writing in question appears to be incomplete in any respect, or where words or phrases used, in their application to the agreement of which they form a part, are ambiguous or unintelligible, parol proof is admissible to supply the incomplete term, to aid in the interpretation and to explain what is obscure or doubtful. (*Emmett* v. *Penoyer*, 151 N. Y. 564.) The cases in which the principle is discussed are numerous, and it is quite unnecessary to review them in detail. Many of them are cited in a recent case in

this court, where it was held that a mortgage upon real estate purporting on its face to be a security for the payment of money might be shown by parol proof to have been delivered for an entirely different purpose, and which gave to it the character of something else than a security for the payment of money. (*Baird* v. *Baird*, 145 N. Y. 659.)

Even if it were admitted that some of these cases have gone too far in extending an exception to a rule of evidence that all must admit has many exceptions, there would still remain a large balance of unquestionable authority to support the argument that a writing which, upon its face, appears to be so informal and incomplete that it can scarcely be said to express a distinct idea without the aid of extraneous proof of some kind, as is the case with the binder in question, is open at the trial to parol proof in order to show the design and purpose of the parties when it was delivered. Such proof does not violate the rule which excludes parol evidence to vary, explain or contradict a written agreement embodying the final and mutual stipulations of the parties.

The judgment should be reversed and a new trial granted, costs to abide the event.

BARTLETT, J. (dissenting). I think this judgment should be affirmed. The case has been tried three times and this is its second appearance here.

In January, 1889, the defendant issued its policy on the testator's building for $10,000, one year. In January, 1890, this policy was duly renewed for a year, and on or about January 1st, 1891, a binding slip was issued continuing the insurance for another year. On the 7th of January, 1891, the defendant wrote a letter to testator's brokers that they would not renew for $10,000, but would for $5,000, and stated " that the risk is not held binding by this company for more than $5,000."

No reply was made to this letter, and on the night of January 13th, 1891, the property insured was destroyed by fire.

The defendant at once assumed the position that the letter of January 7th, 1891, was a cancellation of the binding slip.

On the other hand, the first counsel employed by the testator treated that letter as reducing the insurance under the binding slip to $5,000, and an action was brought to recover that amount.

A verdict was directed for the plaintiff, but the General Term reversed the judgment on various grounds that need not be stated.

At the second trial the complaint was dismissed, and the General Term affirmed the judgment to that effect.

The case then came here, the appellant appearing by new counsel, and this court held that the letter of January 7th, 1891, was not effectual as a cancellation, but was a mere proposition to reduce the insurance, not acted upon, and that the binding slip was in full force and effect at the time of the fire for $10,000. (151 N. Y. 130.)

Thereupon the plaintiffs amended their complaint, asking judgment for the full amount of $10,000.

I have been particular to state the history of this case in order that the situation at the opening of the third trial might be clearly understood.

This court had decided the effect to be given to the letter of January 7th, 1891, and distinctly determined that the binding slip was in full force at the time of the fire.

The defendant's answer to the amended complaint alleged, among other things, that testator's brokers applied, on or about December 30th, 1890, for insurance of $10,000 on testator's premises; that the binding slip was issued temporarily to cover the risk, and that according to custom prevailing in the city of New York between brokers and insurance companies, upon a declination of the risk, the binding slip immediately ceased to exist.

The defendant's claim is that this binding slip was issued " pending the consideration of the application."

The record discloses that on the 26th day of December,

1890, three days before the alleged application was made by the new brokers of the testator, the defendant had sent a renewal of the insurance for another year to the old broker.

When the binding slip was issued it contained the statement that this renewal was not in force, or, in other words, was replaced by the former. This shows that during the last week of December, 1890, the defendant twice renewed or continued this insurance for another year on a risk with which it was necessarily familiar.

At the third trial a verdict was directed for the plaintiff, the trial judge having refused to receive the evidence of custom as pleaded.

The learned Appellate Division, in affirming, held that the evidence was properly rejected. Mr. Justice PATTERSON said: "There was no concealment of its purpose. It was not to explain ambiguities, but was clearly to deprive the instrument of the effect of its express terms and so to vary it and to substitute another and different obligation in the place of that which appeared plainly upon its face."

It is undoubtedly the settled law of this state that the binding slip issued by insurance companies, to stand until the policy is made out and delivered, is a present and complete contract for the full term to be covered; that the law writes into it all the provisions of the regular policy, and if a fire occurs before the policy is issued the insured can recover on the binding slip, subject to such defenses as the company might interpose under the terms and conditions of the policy. The question now presented is, can parol evidence of custom be introduced to contradict and alter an absolute contract of insurance, free from ambiguity?

If it may be done in the case of a binding slip, a policy will be subject to a like attack, as both are complete contracts containing in contemplation of law the same provisions.

That the introduction of parol evidence offered by the defendant in this case is incompetent seems very clear, as it seeks to show that the insured, in the possession of a valid and unambiguous contract of insurance after a fire, is in fact

uninsured. (*Atkinson* v. *Truesdell*, 127 N. Y. 230, and cases cited; *Thomas* v. *Scutt*, 127 N. Y. 133; *Truscott* v. *King*, 6 N. Y. 147; *Chester* v. *Bank of Kingston*, 16 N. Y. 336; *Horn* v. *Keteltas*, 46 N. Y. 605, 610.)

Furthermore, the effect of this parol proof is to vary the contract between the parties and violate the statute, as to the right of the company to cancel the contract of insurance.

The present standard policy and the statute provide that the company can cancel a policy by giving five days' notice.

The company being clothed with this absolute power to terminate the contract, there is no occasion to resort to the defense of custom as set up in this case, in violation of well-settled legal principles and the long-established practice in the insurance world.

Prior to the standard policy the company could cancel at once on giving notice to the insured. The termination of the insurance at the time of giving notice was considered unjust to the insured, and in the standard policy five days was given him in which to place his risk elsewhere. The defense here is that by reason of notice rejecting the risk " said binding slip immediately then and there ended and fell," etc.

This court repeatedly enforced the old provision as to cancellation where notice was given while the binding slip was in force. In *Lipman* v. *N. Y. Ins. Co.* (121 N. Y. 454), Judge ANDREWS said: " The binding slip signed by the defendant was not a mere agreement to insure, but was a present insurance to the amount specified therein."

It was held, however, that the binding slip was subject to the conditions contained in the ordinary policy, and as notice of cancellation had been served before the fire under the clause giving it effect, *eo instanti*, the company was not liable.

This case was followed by the Second Division of the court · in *Karelsen* v. *S. F. O. of London* (122 N. Y. 545, 549), Judge PARKER writing the opinion.

I am deeply impressed with the far-reaching effect of the principles laid down in the prevailing opinion.

It is little short of startling to hold, at this late day in the

law of insurance, that a binding slip is scarcely intelligible without the aid of parol evidence.

As already pointed out, it is the full contract of insurance, having read into it all the provisions of the standard policy, and has been the basis of recovery in many cases. If insurance companies desire a temporary contract of insurance, whereby they gratuitously assume a risk pending investigation, which is to be terminated instantly, at their pleasure, it is very easy to draw it, and no one will be misled.

I vote to affirm the judgment.

PARKER, Ch. J., GRAY and HAIGHT, JJ., concur with O'BRIEN, J., for reversal.

MARTIN and VANN, JJ., concur with BARTLETT, J., for affirmance.

Judgment reversed, etc.