### HAMMOND v. INSURANCE CO. OF NORTH AMERICA.

District Court, S. D. New York.
April 26, 1940.

Judgment Affirmed Dec. 23, 1940.

See 118 F.2d 1013.

Walsh & Levine, of New York City, for plaintiff.

Bigham, Englar, Jones & Houston, of New York City, for defendant.

PATTERSON, Circuit Judge.

The action is to recover on an alleged contract insuring the plaintiff against loss by theft of jewelry. A jury was waived. That the plaintiff's jewelry was lost by theft is not disputed. The jewelry was stolen on August 14, 1938, from a house at Newport, Rhode Island, where the plaintiff was a guest. The issue is whether the loss was covered by insurance.

The jewelry had been covered by insurance which expired on June 5, 1938. The policy was that of another company. In early June the plaintiff discussed insurance of the jewelry with Miss Winslow, a friend who was an insurance broker. The upshot was that Miss Winslow undertook to have the jewelry insured on binder pending an appraisal to determine the value. Miss Winslow was a partner in Townsend & Winslow, insurance brokers. Her partner was an agent of the defendant, but only for automobile insurance. The partnership had an office in the defendant's building, for which no rent was charged. On June 7th, Miss Winslow placed the insurance on binder with the defendant by telephone conversation with Faust, one of the defendant's underwriters. Faust made a memorandum of the transaction. The memorandum contained the plaintiff's name and address, a description of the jewelry, the name of the brokers or agents, and notation that the risk commenced June 7, 1938. For the time being the values given in the expired policy were followed. The binder was an oral one, in the sense that no writing was delivered to the broker. It was evidenced only by the memorandum made out by Faust. Faust was told that an appraisal would be forthcoming, and it was understood that issuance of policy would await appraisal. Miss Winslow by letter of June 8th informed the plaintiff that she had put a temporary binder on the jewelry "until you decide what to do."

From time to time later Miss Winslow inquired of the plaintiff whether she had obtained an appraisal. The plaintiff replied that she had not yet attended to it. On July 21st, Steel, one of the defendant's employees, reminded Miss Winslow of the binder and the contemplated appraisal, and said that the company would not carry the binder much longer. Miss Winslow said that the company might as well cancel, that perhaps that would wake the plaintiff up. The defendant thereupon treated the insurance as cancelled and sent a bill for the premium from June 7th to July 21st to the plaintiff, in care of Miss Winslow's firm. The bill was paid by Miss Winslow and did not come to the plaintiff's notice. The premium was charged on a pro rata basis rather than a short term basis. It is the practice to charge on a pro rata basis when the insurance company cancels, and on a higher short term basis when the insured cancels.

It is disputed whether news of the cancellation or attempted cancellation reached the plaintiff prior to loss of the jewelry. Miss Winslow testified that on August 4th she sent a letter to the plaintiff. A copy of the letter is in evidence, and part of it was as follows: "I carried the insurance on your jewelry on binder from June 7th to July 21st. As you had not given us an appraisal on that date, I cancelled the binder. The jewelry is not insured at all now."

The letter was addressed to the plaintiff at Oyster Bay, where her father lived. She was then in Newport. Miss Winslow testified that on a date around August 10th or 12th she received a telephone call from the plaintiff, acknowledging the letter and discussing another topic mentioned in it. There is no reason to doubt that Miss Winslow sent the letter of August 4th. On conflicting evidence as to the telephone conversation, due to faulty memory on the part of the one or the other, I find that it occurred as testified to by Miss Winslow.

The jewelry was lost by theft on August 14th. Notice of loss was given on Sep-

tember 1, 1938. The jewelry policy in general use by the defendant contained a clause permitting cancellation at any time by the insured, the company in such case to be paid short rates, and permitting cancellation by the company by delivering or mailing five days' written notice to the insured at the address given, the company then to be paid the pro rata premium. The proof as to custom was that in the case of insurance on binder cancellation may be brought about by oral or written notice from the insurer to the broker at whose instance the binder was issued, or by the same sort of notice from the broker to the insurer.

█ ˙ The plaintiff was covered by insurance on June 7, 1938, and for some time thereafter. The binder, whether oral or written, was valid enough, the terms ·provided in the company's common form of policy being deemed incorporated in general into the binder. Hicks v. ˙British America Assur. Co., 162 N.Y. 284, 56 N. E. 743, 48 L.R.A. 424. The question is whether the insurance was terminated prior to August 14, 1938, when the loss occurred.

██ If Miss Winslow acted as agent of the company, there was no termination. Her letter of August 4th would hardly serve as notice of cancellation. It was not · in strict conformity to the provision of the policy regarding cancellation at the company's option, and there is no proof that it was received five days or more before loss. While an argument of some force is made that she should be treated as agent of the defendant, the premises being that her partner was such an agent, at least for automobile insurance, and that the firm of which she was a member had office space in the defendant's building without charge, the weight of evidence indicates that she was a broker rather than a company agent and that she acted only as broker in the transaction in question. Her license was that of a broker, and the letterhead used by her in correspondence with the plaintiff gave her calling as that of insurance broker. Her status being that of broker to effect insurance in the plaintiff's behalf, the defendant was justified in regarding her as

having full authority to act for the plaintiff in all matters relative to the insurance prior to issuance of the policy. Standard Oil Co. v. Triumph Insurance Co., 64 N.Y. 85; Hermann v. Niagara Fire Insurance Co., 100 N.Y. 411, 3 N.E. 341; Karelsen v. Sun Fire Office, 122 N.Y. 545, 25 N.E. 921; Sherri v. National Surety Co., 243 N.Y. 266, 153 N.E. 70. The transaction of July 21st came to this: The defendant's employee complained about the delay in getting an appraisal and said that insurance could not be carried on binder much longer, and the broker replied that the defendant might as well cancel the binder, that possibly it would prompt the plaintiff into getting an appraisal. The defendant thereupon cancelled and sent the broker a bill for the accrued premium on the basis of cancellation by the defendant. This must be deemed, I take it, a cancellation of the binder at the defendant's instance, with notice given to the insured's broker. The notice was not the kind of notice called for by the cancellation clause in a standard policy, but it was acquiesced in or assented to by the broker. If a transaction of the same sort had taken place between the defendant and the insured directly, the efficacy of such a cancellation could not be questioned. With the matter still in the binder stage the broker had authority in the insured's behalf to receive notice of cancellation and to waive compliance with the policy provision regarding notice, authority in other words to assent to a cancellation of the binder. See Sherri v. National Surety Co., supra. The proof on custom shows that prior to issuance of policy ˙the broker's authority is as broad as this. See Underwood v. Greenwich Ins. Co., 161 N.Y. 413, 55 N.E. 936. The task of the broker was not to procure a temporary binder but was to obtain a policy, and for all that appears her acquiescence in termination of the binder was a reasonable means of achieving the ultimate aim, the obtaining of a policy. Her good faith in the matter cannot be doubted. I therefore hold that cancellation of the binder was operative and that the jewelry was not covered by insurance at the time of loss. There will be judgment for the defendant.