trust, in that the beneficiaries are not named, that the term of the trust is not definite, and that the object is not stated.    In this argument the appellant loses sight of what was really intended by the seventh paragraph.    The testator had made a disposition of his property, and, in order to carry it out, it was necessary that certain authority and power should be conferred upon his executors and trustees.    He undoubtedly sought by that clause to confer such power upon them, and did not intend thereby to create any trust in conflict with the prior provisions of his will, or to do more than give them·authority, as he states, "to sell or lease my real estate * * * at such time and in such manner and upon such terms as· they in their judgment shall deem for the interest of my said estate, and to invest the sum or sums realized therefrom in real-estate first mortgages upon improved real estate in the city of New York, United States bonds, or city securities."    With respect to the premises occupied by the testator at the time of his death, which are admitted to have been No. 49 West Eighty-Eighth street, and which by the fifth clause of the will were given to the widow, it is evident that, as this devise was entirely apart from the provision made for her by the sixth clause, and was expressly excepted from the operation thereof, it is to be treated as a separate and distinct piece of property, and that, in dealing with it, the trustees are to pay to· the widow only the net rent of the premises, and that the taxes, assessments, and charges, including repairs upon the house, are to be deducted from the gross rent, and are not to be paid out of the income derived from the property bequeathed and devised in the sixth clause of the will.

The other questions presented, as to what property, in the event of the personal estate being insufficient, shall be applicable to the payment of the claims of creditors, and as to the propriety of the payment of the note of $9,750 to the defendant executrix, should be relegated to ·the surrogate's court, where, upon the accounting or in other proceedings, they can be more properly disposed of than in an action such as this, which was brought for the construction of the will and the partition of the real estate.

The judgment should be affirmed, with costs.    All concur, except VAN BRUNT, P. J., dissenting.

VAN BRUNT, P. J.    I dissent.    There was a clear violation of the statute against accumulation of rents beyond a minority.

---

(28 App. Div. 163.)

## VAN TASSEL v. GREENWICH INS. CO.

(Supreme Court, Appellate Division, First Department.    April 7, 1898.)

1. EVIDENCE OF CUSTOM—UNAMBIGUOUS CONTRACT.

A so-called "binding slip," issued by a fire insurance company, specified the name of the insured, the name of the company, the amount of insurance, the property to be covered, and the time at which insurance should begin, and was accepted by the person admitted to have authority to bind the company.    Held, in an action thereon, that, as these elements constituted a valid and enforceable contract of insurance, and, when read in connection with

the rule of law that such an instrument is operative in connection with the terms of the usual policy of the underwriter issuing it, there was no obscurity, a refusal of the trial judge to allow evidence of a custom that would vary the relations, and substitute new terms of agreement between the parties, was not error.

2. INSURANCE—TENDER OF PREMIUM—ACTION ON POLICY.

Where, after a loss under a fire insurance "binding slip," a tender by the insured of an amount less than the premium was rejected solely on the ground that the company had not insured the building in question, and subsequently the company expressly repudiated any liability, and on that express ground declined to receive proofs of loss, *held*, that the insured was not required to perform the idle ceremony of making full tender before bringing action on the contract.

3. SAME—WAIVER OF CONDITIONS.

A provision in a policy of fire insurance that, if the interest of the insured is other than unconditional and sole ownership, the policy shall be void, is waived by issuing the policy with full knowledge on the part of the insurer of the fact that the building stands on leased land, and a declaration of ownership by the insured must be understood as a description of his insurable interest in the building.

Appeal from trial term.

Action by Emory M. Van Tassel against the Greenwich Insurance Company. From a judgment in favor of plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Henry G. Ward, for appellant.

George Richards, for respondent.

PATTERSON, J. This cause has been tried three times. On the last trial it was presented on amended pleadings. The trial judge directed a verdict for the plaintiff, and from the judgment entered thereon this appeal is taken. The action was brought upon a contract purporting to be one of insurance, and by which, the plaintiff claimed, the full relation of assured and insurer was established between him and the defendant. That contract consisted of an instrument called a "binding slip," which was delivered by the defendant to insurance brokers employed by the plaintiff, and is in these words:

Beecher & Benedict.

New York, 189

Insure E. M. Van Tassel
$10,000 for 12 months
on
Building N. E. corner 13th Ave. and W. 11th street,
N. Y. City.
In store.
Binding this 1 day of January, at noon.
(This memo. to be void on delivery of the policy
at the
office of Beecher and Benedict.)

Company. Amount. Accepted.
Greenwich. $10,000
Renewal
559,298 not in force. Wm. Adams.

It appeared in evidence that the plaintiff, in the year 1889, held a policy of insurance issued by the defendant, which covered the

premises mentioned in the binding slip, and ran for one year from the 1st of January, 1889, and that that policy was renewed for the year 1890. Thereafter, and about the 1st of January, 1891, the binding slip was delivered by the defendant to the plaintiff's brokers. No policy, in form, was issued subsequent to January 1, 1891, upon the risk mentioned in the binding slip. On the 13th or 14th day of January, 1891, there was a total destruction by fire of the building mentioned in the contract. It was held by the general term of the supreme court, on a former appeal in this action (72 Hun, 145, 25 N. Y. Supp. 301), that the binding slip was the equivalent of a renewal of the prior policy; that by that instrument the defendant contracted to continue its policy in force for $10,000 during the year 1891; that the slip bound the company as effectually as the usual renewal receipt issued by insurers, and there was no way by which the defendant could, without the plaintiff's consent, terminate its contract, except in the mode provided in the policy. Upon an appeal to the court of appeals from the decision of the general term above mentioned, definition was not distinctly given to the full contract relations existing between the parties and arising upon this binding slip; that is to say, it was not expressly determined whether the binding slip was a renewal of the policy or an independent contract of insurance. It is very evident, however, that it was either one or the other. If it were a renewal, as held by the general term, then the insurance effected by it became subject to all the conditions of the policy. If it were an independent arrangement, then it amounted to a contract of insurance, subject to the terms and conditions of the usual policy issued by the Greenwich Insurance Company. Lipman v. Insurance Co., 121 N. Y. 454, 24 N. E. 699; Karelsen v. Sun Fire Office, 122 N. Y. 545, 25 N. E. 921. It was conceded on the argument that the usual policy of that company was the standard form of New York policy, which was also the form of the policy either continued or superseded by the insurance effected by the binding slip, so in either respect the full contract between the parties was the same. It is not to be doubted that such a binding slip constitutes valid insurance. It was so held in this case and in the two cases last cited. But it was made an affirmative defense in the answer herein that the binding slip was, as matter of fact, not a completed contract of insurance; that it was issued in accordance with a custom prevailing in the insurance business, to the effect that such instruments are merely temporary gratuitous insurance, to be operative only until the underwriter can determine whether he will accept or reject a proffered risk; and it was claimed that, in this case, notification was given by the defendant to the plaintiff's brokers on the 7th of January, 1891, that it would not accept the risk for a larger sum than $5,000. The legal effect of that notice, either as a cancellation of the insurance or as a limitation of the amount of insurance, was determined by the court of appeals (151 N. Y. 133, 45 N. E. 365), and it was held that it was only a proposition of the defendant for reduced insurance which was unaccepted by the plaintiff, and therefore was inoperative for any purpose in the case. But, under the

affirmative defense respecting the nature of the binding slip, the defendant offered evidence at the trial to prove its contention in that regard. That evidence was rejected, and, as we think, properly so. There was no concealment of its purpose. It was not to explain ambiguities, but was clearly to deprive the instrument of the effect of its express terms; and so to vary it, and to substitute another and different obligation in the place of that which appeared plainly upon its face. It is true there are certain abbreviations which might be amplified, appearing in this instrument, but there is nothing further requiring explanation. It states the name of the insured; it specifies the amount of insurance; it names the time for which the insurance is granted; it designates the property which is to be covered, and declares the time at which the insurance shall begin; it was accepted by the person admitted to have authority to bind the defendant; and it names the insurance company. These are the elements that constitute a valid and enforceable contract of insurance, and, when it is read in connection with the rule of law that such an instrument is operative in connection with the terms of the usual policy of the underwriter issuing it, there is nothing obscure; there is nothing requiring explanation, but everything is before the court to enable it to determine what legal relations were constituted between the underwriter and the assured. There was no error, therefore, in the refusal of the trial judge to allow evidence of a custom that would vary the relations and substitute new terms of an agreement between the parties to the contract evidenced by this binding slip. It would simply have permitted the defendant to contradict its own contract and to substitute a new one.

It is contended, however, on the part of the appellant, that the plaintiff was not entitled to recover because he failed to allege or prove that before suit brought he had either paid or tendered to the defendant a premium of insurance for $10,000. This point is urged, not as affecting the validity of the contract, but as going to the right of the plaintiff to maintain an action upon the contract without actual payment or tender of payment of the premium, as a condition precedent to his right to sue. In the complaint, credit is given for the amount of premium on $10,000 (which was $75), and the recovery is for the amount of the insurance less that premium. The defendant is not in a position to urge that objection, even if it were one that can be taken in any event. It is quite clear from the evidence that, if any premium had been tendered, it would have been rejected by the defendant. It does appear that, immediately after the loss occurred, the plaintiff tendered a premium upon a risk assumed to be to the extent of $5,000 only, and that was rejected, not on the ground of insufficiency in amount, but on the specific ground that defendant did not insure the building referred to in the communication in which the check for the amount tendered was contained. On the 17th of January, 1891, the defendant expressly repudiated any liability, saying it had no insurance on the building referred to. Again, on the 21st of February, 1891, it declined to accept any papers purporting to be proofs of loss, on the express ground that it had no in-

surance on the property referred to.    There were therefore three distinct disclaimers of any connection of the defendant with the plaintiff's loss.    It is well settled that, where a liability is repudiated altogether, and the defendant takes the position that no contract relations exist or will be recognized, the plaintiff seeking to enforce an obligation is relieved from the mere performance of an idle ceremony, which would result in nothing.    Stokes v. Mackay, 147 N. Y. 235, 41 N. E. 496, and cases cited.

It is further urged that there can be no recovery by the plaintiff because he did not show that he owned the building mentioned in the contract of insurance, and the rule is invoked that a breach of warranty of ownership or a false representation as to ownership avoids the policy.    It is alleged in the complaint that, at the time the loss occurred, the plaintiff was the absolute owner in fee of the property and the building erected on the premises.    That allegation of the complaint is denied.    There is no proof that the plaintiff owned the land upon which the building was erected, but it does appear that that building stood upon leasehold ground.    In the absence of any proof of misrepresentation or concealment, it was not necessary for the plaintiff to prove that he was the absolute owner in fee of the land.    It was only necessary for him to show an insurable interest in the building.    There was nothing in the binding slip, nor anything, so far as appears, that was stated at the time that slip was issued, concerning the plaintiff's ownership of the property; but it does distinctly appear that the defendant knew that the plaintiff was not the owner in fee of the land, and that the policies previously issued by it to the plaintiff were so issued with that knowledge.    In other words, the defendant knew the building was on leased ground, and assuming that, in some former application (which, however, does not appear), the statement was made that the plaintiff was the owner in fee of the property, all that was waived by the defendant.    Van Schoick v. Insurance Co., 68 N. Y. 438.    It appears from the policy issued for the year 1859, distinctly, that the building insured stood upon leased ground, and the policy was issued with reference to that situation of the building.    It contains this memorandum: "April 14th, 1890.    It is understood that said building stands on leased grounds."    It was therefore known to the defendant that the plaintiff was not the owner in fee of the property.    But the defendant contends that it still remains that the plaintiff asserted he was the owner of the building, and that there is nothing in the lease in evidence, and under which the plaintiff was in possession of the property, that showed that, as between the landlord and the plaintiff, the latter owned the building.    It appears that the buildings destroyed were large and valuable, were erected by the plaintiff, and paid for by him. We do not find anything in the evidence of any representation that would avoid this insurance on the ground of misrepresentation or concealment as to the ownership of the building.    The argument is made that all of the plaintiff's rights depend upon the conditions of the New York standard policy, and we are not disposed to differ with that view.    One of the conditions of such a policy is that, if the interest of the insured be other than unconditional and sole owner-

ship, the policy shall be void.     But, as before stated, this defendant
knew when it made the contract sued upon that there was no un-
conditional and sole ownership of the premises.     The relation of
the plaintiff to 'the property was distinctly stated when the mem-
orandum was made, in the policy of 1889, that the property stood upon
leased ground.     The legal relation of tenant and landlord was as
well known to the underwriter by that phrase as it was to the
plaintiff, and, when the declaration was made (if it were made) that
he was the sole owner of the building, it is something which related
to a description of his insurable interest in the building arising from
the fact that he had erected and paid for that building.

It is further contended that the trial judge erred in refusing to
allow the case to go to the jury upon the question whether or not the
plaintiff consented to a cancellation of the insurance by acquiescence
in the letter of June 7th of the defendant to the brokers.     That mat-
ter was disposed of by the court of appeals.     The same circumstances
and situation with reference to the sending and receipt of that
letter appeared on the former trial as are now before us.     No new
feature is introduced concerning it, and no further consideration
of that subject is required.     No other matter suggested by the ap-
pellant as a ground for reversing this judgment requires consideration.

The judgment must be affirmed, with costs.     All concur.