WILLIAM J. UNDERWOOD and CARMAN T. SMITH, as Executors, etc., of EMORY M. VAN TASSEL, Deceased, Respondents, *v.* THE GREEN-WICH INSURANCE COMPANY, Appellant.

*Insurance " binder " — evidence competent upon the question as to the company's right to terminate its liability* eo instanti *by giving notice — proof of usage.*

In an action upon a " binder " issued by the defendant, an insurance company, to the plaintiffs' testator, in the following form:

"BEECHER & BENEDICT.

"NEW YORK,          89 .

"Insure E. M. Van Tassel,
        "$10,000 for 12 months, at
"On Building N. E. corner 13th Av., and W. 11 St.
"N. Y. City,
"In Store.
        "Binding this 1 day of Jany., at noon.
" (this memo. to be void on delivery of the policy
"at the
        "Office of Beecher and Benedict).

| | "Company. | Amount | Accepted |
|---|---|---|---|
| | "Greenwich. | 10000. | A. |

" Renewal.
" 559298 not in force.

"WM. ADAMS."

it appeared that after issuing the "binder" the defendant caused a survey of the premises to be made and thereafter wrote the plaintiffs' testator a letter declining to issue a policy for $10,000 and adding that it would renew for $5,000, if desired, but would not hold the risk binding for more than that sum. Six days thereafter the premises were destroyed by fire.

Upon the trial of the action the court ruled that a usage and custom allowing the "binder" to be terminated *eo instanti* would violate the provision of the Insurance Law that a notice of five days is required to terminate liability.

*Held*, that the ruling was error, as the question to be decided was whether the "binder" was a permanent contract embodying the terms of a standard policy or a mere temporary arrangement, the Insurance Law being applicable in the former, and not applicable in the latter case;

That the action of the plaintiffs and their agents in respect to the notice, culminating in an action which had been brought to enforce a liability for the sum of $5,000, was competent upon the question of intent and as to the purpose and understanding of the parties in making the arrangement.

Rumsey and Ingraham, JJ., dissented.

Appeal by the defendant, The Greenwich Insurance Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 24th day of April, 1900, upon the verdict of a jury rendered by direction of the court, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 23d day of April, 1900, directing judgment in favor of the plaintiffs, and also an appeal from an order entered in said clerk's office on the 11th day of April, 1900, denying the defendant's motion for a new trial made upon the minutes.

The following is a copy of the " binder " sued upon :

"Beecher & Benedict.

"New York,          89 .

" Insure E. M. Van Tassel.

"$10,000 for 12 months, at

" On Building N. E. corner 13th Ave. and W. 11 St.

" N. Y. City.

" In Store.

" Binding this 1 day of Jany., at noon.

" (this memo. to be void on delivery of the policy

" at the

" Office of Beecher and Benedict).

| " Company. | Amount. | Accepted. |
|---|---|---|
| " Greenwich. | 10000 | A. |

" Renewal.

" 559298 not in force.

"WM. ADAMS."

*John Notman*, for the appellant.

*George Richards*, for the respondents.

HATCH, J.:

This action is brought to recover a sum of money secured to be paid under a claimed contract of insurance for loss against fire. The loss by fire has been sustained, and the only question arises upon the sufficiency of the contract to create a liability upon the part of the defendant to pay therefor to the extent of the insurance.

The case finds itself in this court for the fourth time, and it has twice been considered by the Court of Appeals. The facts have been several times stated, and it is not, therefore, necessary that we again set them out in detail. The instrument sued upon is claimed to be a binding contract of insurance, and in technical language is called a " binder." It is set out in full in *Van Tassel* v. *Greenwich Ins. Co.* (72 Hun, 143). The evidence shows that Beecher & Benedict, a firm of insurance brokers, was employed by the plaintiff to obtain for him $30,000 of insurance upon the building which was destroyed by fire. These brokers applied to the defendant for $10,000 of this insurance, and it issued the binder slip in question upon such application. Prior to this time one Cutter had acted for the plaintiffs and had procured to be issued by this defendant a policy of insurance for $10,000 upon the same building. This policy having expired, the defendant sent to Cutter a renewal of such policy, but upon the application being made by Beecher & Benedict for the fresh policy, this renewal was called in from Cutter and canceled by the defendant. After issuing the binder the defendant caused to be made a survey of the premises, and thereafter, on January seventh, wrote the plaintiffs' testator a letter, declining to issue this policy for $10,000, and adding that it would renew for $5,000 if wanted, but would not hold the risk binding for more than that sum. This letter is set out in full in the case heretofore cited. Upon receipt of this notice, Gossman, a clerk in the employ of Beecher & Benedict, construed the notice as reducing the obligation of the defendant upon the binder slip to the amount of $5,000. This construction is claimed by Beecher & Benedict to have been without authority from them or from any other source. On January thirteenth, six days after the insurance represented by the binder slip had been declined, the fire occurred. Thereupon the plaintiffs made claim upon the defendant for a liability of $5,000, and filed proofs of loss in that amount. Plaintiffs

also tendered to the defendant the premium on $5,000 of insurance. The defendant refused to receive the tender and repudiated liability for insurance in any sum. The plaintiffs thereupon brought an action, claiming to recover upon the terms of the notice declining the $10,000 insurance as constituting a contract of insurance in the sum of $5,000. The plaintiffs had a recovery in that action for the amount claimed, and from the judgment entered thereon the defendant appealed. Upon this appeal the court held that the letter did not constitute a contract of insurance, but was a mere proposal offering to insure, and, as it had never been accepted by the plaintiffs or their agents, no liability was created thereby, and that an action could not be maintained thereon. (72 Hun, 141.) In the course of the discussion had upon the rendering of that decision, it was stated that the binder slip constituted a contract continuing in force the policy of insurance in the sum of $10,000, and that, if an action had been brought upon that contract, liability could have been enforced, but that both the pleading and the evidence indicated an intent upon the part of the plaintiffs to waive and abandon any claimed liability thereon.

Upon the new trial which was ordered the complaint was dismissed, and upon an appeal to the court the judgment was affirmed upon the opinion previously delivered. (83 Hun, 612.) From that judgment an appeal was taken to the Court of Appeals, where it was held that the letter of rescission did not have the effect of creating a new contract, agreeing with the General Term respecting such question. The court, however, disagreed with the General Term as to the effect of the action which had been taken, holding that if the legal effect of the binder was to operate as a renewal of the insurance existing prior thereto, it might be enforced notwithstanding the action which had been taken; but the liability was to be determined upon the legal relations of the parties at the time of the fire, and not by the plaintiffs' subsequent actions or claims. A new trial was ordered. After this decision the plaintiffs were permitted to amend their complaint by averring a cause of action upon the binder as constituting the contract and claiming to recover thereon the full amount of $10,000. An amended answer was also interposed alleging that the binder did not constitute a contract either of renewal or of original insurance for any particular period of time;

that it was a temporary arrangement which was only operative until notice was given by the company declining to be bound thereby, when it ceased to have any legal effect, and that such was the general usage and custom in the insurance business in the city of New York. Upon a trial had under the amended pleadings, all testimony offered by the defendant to prove custom and usage respecting such contracts was excluded, and the court directed a verdict in favor of the plaintiffs for the full amount. Upon appeal to this court from the judgment the same was affirmed, the court holding that the binder, whether it was treated as a renewal of an existing policy or as an independent contract of insurance, was binding and valid as containing every element of a good contract. (28 App. Div. 163.)

Upon an appeal to the Court of Appeals from this judgment it was reversed, the court holding that the binder could not be construed as a contract for the renewal of an existing policy of insurance; that the language "renewal  *  *  *  not in force," excluded such construction; that the binder upon its face was ambiguous, imperfect and uncertain, if treated as a contract of insurance, and was, therefore, subject to be explained by parol testimony as to custom and usage in order to determine the intention of the parties and the binding force of the contract. (161 N. Y. 413.) The opinion in the Court of Appeals states that the real question in issue "is whether the facts stated in the answer  *  *  *  constituted any defense to an action based upon the binding slip." And further, "we think that the answer contained a defense and that the proof offered was competent." In speaking of the case of *Lipman* v. *Niagara Fire Ins. Co.* (121 N. Y. 454) the court said : "In the case cited the binding slip is said to be evidence of present insurance. The defendant admits that this paper is evidence of present temporary insurance pending an inquiry as to the risk and terminating *eo instanti* upon notice, as was held in that case. So in that case it appeared that parol testimony was given to explain the purpose for which the paper was delivered, and this court said that the evident design of the writing as *disclosed by the testimony* was to provide temporary insurance pending an inquiry by the company as to the character of the risk.

"An informal paper of this character generally denotes what-

ever the purpose intended by the parties at the time of its delivery was, and its legal effect as an agreement must, in the nature of things, be effected by known and established custom."

After discussing the incomplete character of the binder considered as a contract, the court adds, " All this shows that the binding slip did not embody the mutual stipulations of the parties, and, hence, standing alone, was not a complete and perfect contract, but was open to explanation by parol proof as to the intention of the parties and the established custom of the business."

It is perfectly clear, therefore, that this authoritative and last announcement by the Court of Appeals in this case authorized parol proof to be given in explanation of the binder, the custom and usage in respect to the same and the intention of the parties respecting the character of the contract. Obviously this permitted proof to be given showing custom and usage as to the temporary or permanent character of the contract, and, if temporary, the method of terminating liability under it.

As bearing upon these questions, the acts of the parties in their treatment of the contract is competent and pertinent proof. While the legal status of the parties is to be determined by the relation existing at the time of the fire (151 N. Y. 130), yet acts which indicate what the parties understood to be their rights under the contract may be resorted to for the purpose of determining their legal status at the time of the fire. This does not affect the legal right flowing from the status, it is simply an aid in determining what that status was.

Upon this state of the law a fourth trial was had. The defendant, in order to establish its defense that the contract was temporary and that recognized methods existed by which liability thereunder might be terminated, offered proof by persons engaged in the insurance business tending to show that the notice contained in the letter which was written declining to insure the premises, as stated in the binder, was such notice as, according to recognized custom and usage, ended the contract and terminated liability thereunder. Some of the proof was received, but subsequently the court held that usage and custom respecting such contracts could not operate to end the contract *eo instanti*, for the reason that it would violate the statutes governing insurance.

A reference to the court's charge shows that this ruling proceeded upon the ground that every contract for insurance is deemed to have incorporated therein the provisions of the statutes regulating insurance policies; that thereunder a notice of five days is required to terminate liability. This undoubtedly is the rule if it be assumed that a permanent contract for insurance was effected. But the ruling begs the very question which, under the last decision of the Court of Appeals, became the question to be determined upon the proof. That question is, was the contract permanent, and was it, *eo instanti*, a contract of insurance under the terms of a standard policy; or was it a temporary arrangement under which the defendant agreed to insure and did insure the property for a time, sufficient for it to examine the property and determine whether it desired to issue a policy upon the terms expressed in the binder or not? Did it retain the right to terminate liability under a special arrangement, or was its liability permanently fixed the moment it delivered the binder? If the latter is the rule, then, undoubtedly, a five days' notice was required to terminate liability. If the former, then the character of the contract and the custom and usage by which liability should be determined became questions to be decided upon the proof respecting it. Upon the proof offered in this respect the defendant presented a question of fact for solution by the jury, and under the proof they could find that the binder was a temporary arrangement, and that the notice served terminated liability thereunder. The ruling which disregarded this testimony and the refusal to submit such question to the jury was error within the rule of law governing this case. Aside from this consideration, however, was the action of the plaintiffs and their agents respecting the notice, and culminating in the action which was brought to enforce a liability for $5,000. All of such acts bore directly upon the intent of the parties in making the arrangement, and the understanding of the parties respecting the obligation created thereby.

Upon this proof the jury would have been authorized to find that the parties understood that the binder slip was intended only to represent a temporary arrangement, and that the notice declining to be bound thereby terminated liability thereunder. Of course this proof taken separately or collectively may not conclusively establish such result, but it is proof which the defendant became

entitled to have submitted to the jury and from which they might find that liability terminated upon service of the notice. As we have before observed, proof of the acts of the plaintiffs after the loss while not available to change the legal status of the parties is, nevertheless, available to show what were the existing legal relations. The defendant, therefore, became entitled not alone to have the question of whether Beecher & Benedict accepted the notice as terminating liability under the binder slip, but also the other questions in the case. As this was not done, it follows that the judgment should be reversed and a new trial granted, costs of this appeal to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concurred; RUMSEY and INGRAHAM, JJ., dissented.

RUMSEY, J. (dissenting):

This case has been tried four times and has been to the Court of Appeals twice. The action was originally brought to recover the sum of $5,000, claimed by the original plaintiff to be the amount of an insurance made by the defendant on his property. The contract was represented by a binding slip issued on the 1st of January, 1891, in the usual form for $10,000, but it appeared that on the seventh day of January the defendant sent to the plaintiff's agent a letter stating that the application of the plaintiff for $10,000 of insurance was declined, but that the company would renew for $5,000 if wanted, and saying that the risk would not be held binding by the company for more than $5,000. The theory upon which the action was then brought was that this so-called cancellation of the binding slip reduced the insurance to $5,000, and, therefore, the plaintiff was entitled to recover for that reduced amount. On the first trial the plaintiff had a verdict, and from the judgment then entered an appeal was taken to the General Term. That court determined that the letter of the company, dated the seventh of January, was not effectual as a cancellation of the binding slip, but only amounted to an offer on the part of the defendant to reduce the insurance to $5,000; that as a matter of law the acts of the plaintiff after the receipt of the letter operated as a concession on his part that the insurance for the $10,000 mentioned in the binding

slip was at an end, and that the letter did not create a new insurance as its terms had not been accepted; and for these reasons the court held that the complaint should have been dismissed and ordered a new trial. (72 Hun, 141.) The new trial was had; the complaint was dismissed; an appeal from the judgment of dismissal was taken to the General Term where it was affirmed (83 Hun, 612), and from that judgment an appeal was taken to the Court of Appeals.

That court agreed with the General Term that the letter of the defendant was not effectual as a cancellation of the insurance but was a mere proposition for reducing it. So far the effect of the letter was established by both courts of review; but the Court of Appeals held that the facts relied upon by the General Term as showing that the plaintiff had elected to terminate the insurance under the binding slip did not have that effect as a matter of law, and, therefore, concluded that the courts below had erred in dismissing and in sustaining the dismissal of the complaint; but that the courts had erred in that matter only. (151 N. Y. 130.) But the court, all the judges concurring in the opinion, took occasion to say that, as the plaintiff had not accepted the offer to reduce the insurance, the original binding slip was in force for the full amount, and upon the facts made to appear in that case the plaintiff, had he sought to do so, might have recovered that full amount.

When the case went back for a new trial the plaintiff amended his complaint by suing upon the binding slip as a contract of insurance for the full amount of $10,000. The defendant set up in answer to the amended complaint that by the custom of insurance men in the city of New York, when an application for insurance was made to it the defendant gave a binding slip covering temporarily the risk, pending the consideration of the application; that in accordance with that custom as was well known to the plaintiff's brokers, in case the application was declined by the defendant and notice of the declination given to the brokers, such binding slip immediately then ended and fell; that it was not a contract for a year's insurance, but the words "insure E. M. Van Tassel $10,000 for 12 months," were simply inserted to inform the defendant of the length of time for which the insurance should run if a standard policy was issued; that the binding slip was issued and accepted by the plain-

tiff's brokers under that usage; that the defendant on the 7th of January, 1891, having considered the application, notified the plaint ff's brokers in writing that such application of the plaintiff for $10,000 of insurance was declined, and that thereupon the contract represented by the binding slip was determined.

Upon these pleadings the case came to trial for the third time. The defendant offered to prove the facts set up in its answer as just stated, but the court held that the binding slip was a complete and perfect contract of insurance in itself; that it was not subject to be varied by parol evidence, and that for that reason the evidence was not competent. The parol evidence was, therefore, excluded and a verdict ordered for the plaintiff for the full amount of the binding slip. Upon appeal to this court the judgment was affirmed. (28 App. Div. 163.)

The case then again went to the Court of Appeals. It is important here to consider the situation of the record which was presented to that court and the question which it decided. The question on which the case turned in the Court of Appeals was whether parol proof was competent to explain or vary the effect of the binding slip by showing that instead of being a contract of insurance for twelve months it was only a temporary arrangement entered into by the parties until the defendant had accepted or declined the application of the plaintiff for insurance. No other question was presented in this court or in the Court of Appeals. It is stated in the prevailing opinion in that court that the question was whether the facts set up in the answer above referred to constituted any defense to an action based upon the binding slip. (161 N. Y. 413, 419.) The court said that if those facts constituted a defense then it was error to refuse to permit the defendant to prove them, and for that error the judgment was reversed. The prevailing opinion was concurred in by four judges. The dissenting opinion was concurred in by three judges of the court. If the two opinions are examined it becomes apparent that the sole question presented there, and the only question decided, was that stated in the prevailing opinion, and the decision was based upon the reason that the binding slip was not a complete or perfect contract in itself and could be varied by parol. Whatever else may have been stated by way of argument nothing else was decided. The rule laid down

in 151 New York was not impugned or limited, the court say-
ing that there could be no recovery upon an unaccepted proposition
of the company based upon its letter of the seventh of January, but
that if there could be a recovery at all it must be upon the binder
and not the letter. So it will be seen that the effect of the letter of
January seventh was nowhere discussed by this court or by the
Court of Appeals after the decision of that court upon the first
appeal, but that what was then determined as to the effect of that
instrument still stands as the law of the case.

Upon the trial now under consideration the defendant was per-
mitted to give parol evidence bearing upon the facts alleged in its
answer. It is claimed by the plaintiff that the evidence thus given
was not sufficient to establish those facts, but in the view I take of this
case it is not necessary to consider that claim. It is to be noted that
the defendant's claim stands upon the proposition that the binding
slip, although not a contract for a year's insurance, did operate to
insure the plaintiff for $10,000, pending the consideration by the
defendant of the plaintiff's application for insurance for that sum,
and was good and binding until that application was declined, or
until it should be accepted and a standard policy issued. There is
no claim on the part of the defendant that there was any other limi-
tation than that upon the effect of the binding slip. After giving
the parol evidence as to the custom which the defendant claimed
was operative to require such a construction as it sought to give to
the binding slip, the defendant offered in evidence the letter of
January 7, 1891, which it claimed was a declination by it of the
application for insurance and which put an end to the binding slip.
If that paper was not such a declination, then whatever may have
been the true construction of the binding slip its force as a contract
for $10,000 did not come to an end, because it remained in force
until the application had been declined. So it remains to consider
whether the paper relied upon by the defendant as a declination of
the risk was operative for that purpose.

It seems to have been the opinion of the Court of Appeals and of
the General Term of the Supreme Court that that letter did not
operate of itself to put an end to the binding slip for the reason that
it amounted simply to an offer on the part of the defendant to carry
the insurance asked for by Van Tassel to the amount of $5,000,

instead of to the amount of $10,000. That is to say, it was simply a counter-proposition of the insurance company, in respect of this insurance, to that made by Van Tassel, that it would insure the property, but not for the amount for which Van Tassel had applied. Until that proposition was acted upon by the person to whom it was made there was no final contract between the parties for the insurance, and the temporary arrangement represented by the binding slip as a contract of insurance continued in force; so it was essential for the defendant in establishing its defense to show either that it had declined Van Tassel's application for insurance or that the new proposition that it had made for the insurance had been accepted by Van Tassel. It seems to us quite clear that the letter of the defendant was not an absolute declination, but a proposition to modify the offers for insurance, and, therefore, the defendant could only establish its defense by showing that the proposal had been accepted by the brokers for Van Tassel. This evidently was so understood by the defendant, because it not only alleged in its answer as part of the defense that the application was terminated and ended by the notice of declination, but that the brokers had accepted and acquiesced in the same, and upon the trial it attempted to prove the acceptance by the brokers of the notice of declination and the consequent termination of the contract thereby.

So giving to the notice the effect which the Court of Appeals has already given it, the question which remains in the case is one of fact, whether or no the brokers of Van Tassel did accept that notice as putting an end to the contract. That question was submitted to the jury by the learned justice at the Trial Term, and was by them answered in the negative. After that answer had been given, the facts which the defendant might regard as established were that, upon Van Tassel's application for $10,000 of insurance, it had issued a binding slip which, by the custom of insurance men, was to operate as an insurance of the property until the application, pending the consideration of which it had been issued, had been declined; that the defendant had sent to the brokers a paper which was not an absolute declination to insure the plaintiff, and which only operated as such in case it was so received and accepted by the brokers to whom it was sent; that the brokers did not accept it as such a declination and the defendant was not advised that it was so accepted.

The necessary result of these facts, as it seems to me, was that the binding slip still stood in force for its face value, and that Van.Tassel had a right to rely upon it as a policy of insurance for that amount. If that be correct, then it necessarily follows that, upon the facts as they were established upon the trial, the plaintiff was entitled to recover, and the judgment was right and should be affirmed.

Ingraham, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.