(46 Misc. Rep. 41.)

### BRADLEY et al. v. STANDARD LIFE & ACCIDENT INS. CO.

(Supreme Court, Trial Term, Oswego County. December, 1904.)

1. EMPLOYER'S LIABILITY INSURANCE—CONTRACT—EVIDENCE.

The holders of an employer's liability insurance wrote the insurance agent to ask if their policy covered certain building in which they were engaged, and were told that it did not, but rates were quoted with a statement, "I will bind the risk now until you have decided just what you want to do." Held that, as plaintiffs had previously been insured with defendant, and as the agent considered the letter as an application and bound the risk, with which such action plaintiffs acquiesced, there was a valid contract of insurance.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 210.]

**2. SAME—ACQUIESCENCE.**

Where, after an accident, the insurance agent, on being informed thereof, did not repudiate liability, and the company sent an adjusting agent, it was evidence that the parties considered the contract of insurance sub-sisting.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1078.]

**3. SAME—CONDITIONS—WAIVER.**

A stipulation in an employer's liability policy, providing for indemnity only for sums paid in satisfaction of judgment after trial of the issue, is waived where, after notice of a proposed settlement, the insurance company refused to take part in the case or give any advice, and the insured makes a settlement in good faith.

Action by Walter Bradley and others against the Standard Life & Accident Insurance Company. Judgment for plaintiffs.

Charles N. Bulger and D. P. Morehouse, for plaintiffs.
Hancock, Hogan & Devine, for defendant.

WRIGHT, J. The material facts are as follows: On July 16, 1898, the plaintiffs, in Oswego, N. Y., wrote the following letter to the defendant's agent, A. T. Armstrong, in Syracuse, N. Y.:

"Dear Sir: We have commenced work on a job or rock excavation and masonry at Fulton, N. Y. As we understand it policy No. 8700 held by us covers this work. Also what is the additional cost to cover public?"

On the 19th of July the defendant's agent, Armstrong, replied:

"Dear Sir: Your esteemed favor of the 16th received, and in reply would say that your present policy No. 8700 will not cover work done in Fulton, N. Y., as the policy was taken out for mason work on the Oswego canal. As near as I can figure the work you now have on hand at Fulton, the rate will be $3 per $100 on the excavating and blasting and $1.98 on the mason work, $1.50 per $100 on the outside public. Wish you would call me up by 'phone to-morrow at 1:20 o'clock if possible at my expense. I can then explain the matter more satisfactorily to you. I will bind the risk now, until you have decided just what you want to do. If you so desire I can come to Fulton or Oswego to-morrow afternoon. Trusting that you may arrange the matter satisfactorily to you, I remain, etc."

Nothing further was done until July 27th, when the plaintiffs notified the defendant and his agent, Armstrong, of an accident which resulted in the death of an employé while working on the job at Fulton, N. Y., the day before. An action of negligence was subsequently brought by the administratrix of the deceased employé against the plaintiffs herein. The action was settled for $1,500. The present action is brought by the plaintiffs to recover this sum of $1,500 from the defendant on the alleged contract of insurance as set forth in the correspondence above.

The intent of the parties must be gathered from the correspondence, in the light of the surrounding circumstances and the acts of the parties. The plaintiffs had been accustomed to insure their work with the defendant through its agent, Armstrong. The agent had reasonable ground to infer that the plaintiffs would continue their patronage and keep their work insured. That was doubtless his attitude of mind when he received the letter of July 16, 1898, from the plaintiffs. That letter contained two propositions: First,

a statement that they understood that their Fulton job, as to their employés, was covered by their last policy (No. 8,700); second, an inquiry as to the rate of insurance to cover liability for negligence to the outside public. The agent, from the previous course of dealing, evidently considered the first proposition in the letter as a statement that the plaintiffs desired protection for the Fulton job, and, since he was obliged to inform them that it was not covered by their last policy, he concluded to regard that clause as an application for a policy of insurance according to the terms of said policy No. 8,700, except as to rates, and he treated it as such by answering, stating the rates of premium for that job, and saying that he would "bind the risk" from that date until the plaintiffs concluded what they desired to do, evidently meaning by the last clause what they desired to do respecting protection against liability for negligence to the outside public.

The plaintiffs being thus informed that the agent treated their letter as an application for insurance, and also being thus informed that they were actually insured against liability as to their employés, and thus, impliedly, that they would be charged with the premiums named, clearly acquiesced in the agent's construction of their letter as an application for such insurance in accordance (excepting rates) with the terms of their policy No. 8,700, above referred to, and acquiesced in the issuing of the temporary policy by the agent, or, in other words, to his binding the risk, and acted accordingly. This acquiescence is shown by the following facts, considered together: First. The plaintiffs' firm, after being thus impliedly informed that they were being charged with the premiums on insurance, remained silent for six days prior to the accident, when, in the absence of acquiescence, it may be fairly inferred that they would have promptly objected to being thus charged. Second. Mr. Saladin, one of the plaintiffs' firm, testified, on cross-examination, that upon the receipt of said letter "I considered we were insured," and that he filed the letter among the papers of the firm. It appears, however, that he also desired to await consultation with another member of the firm, absent in the South and daily expected home. But this consultation evidently was intended to relate only to the amount or particulars of outside public insurance, since that was the only question remaining open for negotiation.

There is evidence after the accident that the defendant understood that the negotiation amounted to a contract, for, after that occurred, the plaintiffs personally informed the agent, Armstrong, of it, and their claim of indemnity for the loss, and the agent raised no question against liability, but said he had referred the matter to the defendant's home office, and, after a period of over two weeks after receiving proofs of the loss, the home office acted under a distinct privilege mentioned in the policy No. 8,700 (to which policy reference was made in plaintiffs' letter of July 16, 1898, which the agent regarded as an application for insurance), by sending an adjusting agent "to inspect the plant, works, machinery, and appliances used" by the plaintiffs, and to ascertain the cause of the accident. The agent, having performed this duty in the presence

of a member of the plaintiffs' company, reported to the defendant, and then for the first time the defendant denied liability. These acts of the parties are competent evidence as bearing on their understanding as to the existence of the contract. In Underwood v. Greenwich Ins. Co., 54 App. Div. 386, 66 N. Y. Supp. 651, wherein the character and force of a "binder" was in question, Judge Hatch, in his opinion, says:

"As bearing upon these questions, the acts of the parties in their treatment of the contract is competent and pertinent proof. While the legal status of the parties is to be determined by the relation existing at the time of the fire (Van Tassel v. Greenwich Ins. Co., 151 N. Y. 130, 45 N. E. 365), yet acts which indicate what the parties understood to be their rights under the contract may be resorted to for the purpose of determining their legal status at the time of the fire. This does not affect the legal rights flowing from the status; it is simply an aid in determining what that status was."

All the essential details of the contract respecting the employés were made definite and certain by the correspondence, taken in connection with the reference made in the plaintiffs' letter of July 16th to their last policy, No. 8,700. All the correspondence and acts of the parties, both before and after the accident, in the light of the surrounding circumstances, are more easily reconciled upon the theory that the parties understood that a valid contract of insurance existed, than upon the opposite theory. Clause No. 8 in the policies in evidence reads in part as follows:

"No action shall lie against the company as respects any loss under the policy unless it shall be brought by the assured himself to reimburse him for a loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue."

The defendant claims that, even though there be a valid contract of insurance, it is not liable, for the reason that there was no trial of the issue. It claims that, as a condition precedent to the rights of the plaintiffs to maintain the action, they must have paid a judgment actually recovered against them. The liability of the plaintiffs for negligence resulting in the death of the deceased is established. The settlement was made by the plaintiffs in good faith, was advantageous to the company, and for such an amount as a jury, upon the facts established, would have been warranted in awarding. The defendant was notified of the proposition to settle, and declined to offer any advice or to take any part whatever in the case. Under these circumstances it must be held that the defendant has waived whatever rights it had under the clause in question.

Judgment accordingly.